0016

Ray V. SEGARS, Jr., and R. V. Segars Company, Inc., Respondents, v. Charles A. SEGARS, Appellant.

(310 S. E. (2d) 156)
Court of Appeals

*M. M. Weinberg, Jr.*, of *Weinberg, Brown & McDougall*, Sumter, *for appellant.*

*Kermit S. King* and *W. Thomas Vernon*, of *King & Vernon*, Columbia, *for respondents.*

December 5, 1983.

CURETON, Justice:

This action was commenced by respondents Ray Segars, Jr. and R. V. Segars Company for specific performance of a contract and for an accounting. The issues on appeal relate to the sufficiency of the evidence as to respondents entitlement to specific performance, whether and in what quantity they were dispossessed of realty, the amount to which they are entitled in an accounting, including profits, the taxing of the costs of the action and the admissibility of certain evidence. This matter was tried before a master who found that appellant should be required to specifically perform the contract and account to respondents for $5,902.25 in expenses. The circuit court agreed with the master that the appellant Charles Segars should specifically perform the contract obligation but found he should account to the respondents in the amount of $20,588.25. We affirm the order of specific performance but reverse and modify the order to account.

Much of the controversy in this case centers around a Private Annuity Agreement entered into by R. V. Segars, Sr. and his sons, Ray Segars and Charles Segars, on January 1, 1971. The Agreement provided for the father's conveyance of the 1800-acre family farm to the sons in consideration of their paying him $48,000 a year for life. A corporation, R. V. Segars Company, was created. Ray and Charles assigned their interests under the Private Annuity Agreement to the Company in consideration of its assumption of their liabilities under the Agreement.

On April 2, 1976, following a disagreement, Ray and Charles contracted to sever their business ties. The April 2nd Contract provided, among other things, that Charles would convey his stock and interest in the Company to Ray in consideration of Ray's relieving Charles of all obligations of the Company.

In his first cause of action, Ray seeks specific performance of the April 2nd Contract. The parties stipulated that Ray had performed each obligation required of him with the exception of securing a complete release of Charles's obligations under the Private Annuity Agreement, and that Charles had performed none of the conditions required of him under the Contract.

The second cause of action, for an accounting, alleged that Charles had dispossessed the Company of the Cain tract leased by the Company in its farming operations. Testimony revealed that the Company planted onions on the tract at the beginning of the crop year in the fall of 1975. This crop failed in late October. On January 15, 1976, Charles gave the owner, Mrs. F. M. Cain, his personal check for $1,000 in partial payment of the rent due, intending that the Company farm the land. Using Company labor, machinery and materials, Charles, as overseer of the farming operation, planted corn on the tract in March, 1976. The Company having failed to pay the additional $4,000 rent when due, Charles paid it on April 9, 1976 from his personal funds. (Approximately seven days earlier, the parties had agreed to dissolve their business ties). Thereafter Charles cultivated and harvested the corn crop, sold it, and retained all the profits.

Charles Segars's answer admitted that he should account to the Company for some profits but he disagreed as to the amount. Summary judgment on the issue of liability to ac-

count was therefore granted against him by another circuit judge. Both causes of action were then referred to a master for appropriate findings and recommendations.

The master, after hearing the evidence, recommended that Charles perform his obligations under the Contract and pay the Company $5,902.25 by way of reimbursement for expenses. Both parties served exceptions to the master's report.

After a hearing on the exceptions, the circuit court adopted the master's recommendation for specific performance, but found that Charles should account to the Company for $20,588.25. The nearly $15,000 difference in the accounting ordered by the circuit court from that recommended by the master is based on the circuit court's finding that the Company was entitled to share in the profits of the crop and that the court's calculation of reimburseable expenses exceeded those found by the master. Charles was also ordered to pay the costs of the action, including the master's fee.

Charles's sole contention on the issue of specific performance is that he had no obligation to tender performance under the April 2nd Contract until he had been completely relieved of all liability for obligations of the Company. He maintains that the Private Annuity Agreement was an obligation of the Company on which Ray had not secured his release from liability.

This Court's scope of review, where the master and circuit judge concur in their findings of fact, is limited to a determination of whether there is any evidentiary support for the findings. *Townes Associates, Ltd. v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976). The evidence clearly supports the circuit court's concurrent finding on the issue of specific performance, and we so hold.

The April 2nd Contract, paragraph 3, provided that Ray and the Company "shall hold and save harmless Charles . . . of and from any past, present or future liability . . . and specifically have Charles . . . completely relieved of all liability as maker, co-maker or endorser on any and all notes, trust receipts and other obligations of the corporation, . . . it being the intention of this Agreement that when the same becomes of force and effect, Charles shall [not] have any obligation whatsoever with respect to the matters . . . mentioned." If the Annuity

Agreement is an "obligation of the Company" then, Charles is entitled to withhold his performance.

Charles argues that the assignment of the Annuity Agreement to the Company transferred the obligation to pay the $48,000 yearly for the benefit of their father to the Company. It is settled, however, that a party to a contract cannot relieve himself of the obligation which the contract imposes upon him by merely assigning the contract to a third person. The other party to the contract may agree to accept the performance of the assignee in the place of that of the assignor, creating a new contract by novation. 6 Am. Jur. 2d *Assignments* Section 110 (1963); 6A C.J.S. *Assignments* Section 97 (1975).

In this case, the very language of both the Annuity Agreement and the Assignment of Annuity negates any intent by the parties to release Ray and Charles from their obligation on the annuity. The Annuity Agreement, made in contemplation of its assignment to the Company, provides that "in the event the Transferee should ... assign the property, the liability to make ... payments shall nevertheless continue ...." The Assignment of Annuity recites that the Company will "assume all liability of the [parties] as stated in said ... [Annuity] Agreement and nothing herein shall be construed as to change the liability of [Ray] and [Charles] to [the father] under the ... Agreement ...." To find that the assignment of the Annuity Agreement transferred the obligation from Ray and Charles to the Company would require this Court to ignore the express terms of the assignment. We find no error in the circuit court's order that Charles specifically perform the conditions of the contract.

Charles Segar's remaining assignments of error are based on findings related to the second cause of action alleging dispossession of the Company of the Cain tract and demanding an accounting.

At the hearing before the master, Charles introduced evidence of the circumstances of the dispossession. The circuit court found the admission of the evidence to have been error by the master because the prior entry of summary judgment as to liability conclusively established dispossession.

Charles contends that the grant of summary judgment did not establish dispossession, but if it did, the evidence of the circumstances of the dispossession was admissible on the issue of the amount of the accounting. We find no merit in this contention. Entry of summary judgment on the issue of liability determined that the defendant is liable to the plaintiff on the claim asserted in the complaint, leaving only the amount of the damages at issue. *Nauful v. Milligan,* 258 S. C. 139, 187 S. E. (2d) 511 (1972).

The claim asserted in the complaint is the dispossession of the Company of the land and crop. We agree that the grant of summary judgment conclusively decided this allegation against Charles prior to the reference. Testimony in contradiction of the unappealed order for summary judgment was inadmissible at the hearing before the master.

Likewise, the circumstances of the dispossession were irrelevant to a determination of the amount of the accounting. The law provides that one wrongfully dispossessed of property is entitled to the rents and profits derived from the property during the dispossession. *Martin and Walter v. Evans,* 20 S. C. Eq. 171, 1 Strobhart's Equity 350 (1847). The circuit court properly found the evidence inadmissible.

This Court does find merit in Charles's further contention that the circuit court erred in reversing the master's finding on the amount of expenses the Company incurred in the planting of the corn crop. As to this issue, we may make findings in accordance with our views of the preponderance of the evidence, the master and circuit judge having disagreed on the findings. *Townes Associates Ltd. v. City of Greenville, supra.*

A review of the evidence discloses that four people testified to the costs of planting the corn crop. Ray Segars, the office business manager, submitted a list of the Company's expenses, prepared by him, totaling $12,799.84. He stated that his job involved paying the bills of the Company and he was thus familiar with the cost of planting the corn crop. Though it is not clear on what basis he arrived at the figures, it is apparent that he had no separate bills and receipts for the farm supplies used in planting corn on the

Cain tract. Dr. Ezell, presented as Ray's expert witness on the costs of planting corn, testified he was unfamiliar with the costs incurred in planting such a crop since his specialty involved other crops.

Charles Segars, the overseeing manager, testified to the quantities and costs of the farm supplies and labor actually used in planting the corn. He was familiar with the machinery used, including an amount for fixed costs in his total of $5,902.25. Dr. Stanton, an agricultural economist for twenty years, testified from information supplied by Charles, that the average estimated cost to the State for similar planting would be $1,298.04, and the cost to the Segars Company, $1,508.08.

In the face of such sharply conflicting testimony, the credibility of the witnesses becomes a key factor in the resolution of the issue. Only the master had the benefit of observing the demeanor and assessing the veracity of the witnesses. His finding is amply supported in the record. Therefore, the finding of the circuit court that the Company incurred expenses of $12,799.84 is reversed. We find the expenses borne by the Company to be $5,902.25.

Charles also maintains that the circuit court erred in reversing the master's finding that the corn crop was planted on 178 acres of the Cain tract. This issue assumes importance only because Ray Segars based the calculation of the Company's expenses on the planting of a 205-acre tract, which acreage the circuit court found to have been established by the evidence. Having found that the preponderance of the evidence fails to support the expenses enumerated by Ray, this issue is now moot.

We disagree with Charles's further contention that the trial court erred in reversing the master's finding that the Company was not entitled to share in the profits of the corn crop. Summary judgment having established Charles's dispossession of the Company, the law dictated that it share in the profits. *Martin and Walter v. Evans*, 20 S. C. Eq. 171, 1 Strobhart's Eq. 350 (1847); *Rabb v. Patterson*, 42 S. C. 528, 20 S. E. 540, 46 Am. St. R. 743 (1894).[1]

[1] We do not reach the question of whether the respondent is entitled to all of the profits from the farming operations in view of the fact that respondent has not contested the trial judge's formula for apportioning the profits.

It is necessary, however, that this court recompute the relative shares of each of the parties in the proceeds from the sale of the corn crop. The crop yielded a gross income of $47,389.13. Total expenses amount to $22,596.06: the Company incurred expenses of $5,902.25 (26.2%) and Charles personally spent $16,692.81 (73.8%) (no exception taken to this figure) in the rental of the tract and harvesting the corn. Thus, net profits are $24,794.07. Apportioning net profits by expenses borne, the Company is entitled to receive $6,496.05 and Charles, $18,298.02. Combining the Company's expenses and its share of the profits, Charles is therefore liable to account to the Company in the amount of $12,398.30.

Lastly, Charles contends the circuit court abused its discretion in ordering him to pay the master's fee. We find no abuse of discretion. The costs were awarded to the prevailing party and against the losing party in accordance with Sections 15-37-10 and 15-37-20, S. C. Code of Laws, (1976). *See South Orange Trust Co. v. Conner*, 228 S. C. 218, 89 S. E. (2d) 372 (1955).

The judgment of the circuit court is affirmed as to the first cause of action. The judgment establishing the amount of the accounting on the second cause of action is hereby affirmed as modified. It is the order of this Court that judgment of $12,398.30 against Charles Segars and in favor of Ray Segars and R. V. Segars Company be entered. The Clerk of Court for Sumter County is directed to enter judgment accordingly.

Affirmed as modified.

SHAW and GOOLSBY, JJ., concur.