504 S.E.2d 356

**AMERICAN FIRE AND CASUALTY COMPANY, Respondent,**

v.

**John Land JOHNSON, Appellant.**

**No. 2874.**

Court of Appeals of South Carolina.

Submitted June 2, 1998.
Decided July 20, 1998.
Rehearing Denied Sept. 17, 1998.

Wayne Floyd, of Wayne Floyd Law Office, West Columbia, for appellant.

J. Kenneth Carter and David S. Cobb, both of Turner, Padget, Graham & Laney, Columbia, for respondent.

CURETON, Judge:

American Fire and Casualty Company (American Fire) instituted this action against John Land Johnson (Johnson) seeking indemnification, costs, and attorney's fees for the amount American Fire paid Lexington County to satisfy a claim on a public official's fidelity bond. Johnson counterclaimed for bad faith payment of the claim. At the close of the evidence, the trial court directed a verdict in favor of American Fire on its indemnity claim and also on Johnson's counterclaim. We affirm.[1]

---

1. Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

## FACTS

Johnson was the probate judge of Lexington County from January 1975 until December 1990. In April 1984, the South Carolina Department of Mental Health (DMH) contracted with the Lexington County probate court to hold hearings for non-Lexington County residents who were involuntarily committed to DMH facilities. The initial contract between DMH and the probate court covered May 1, 1984 to December 31, 1984. DMH and the probate court renewed the contracts each year until December 31, 1989.

Johnson performed these hearings for DMH from 1984 through 1989. During that time, DMH paid $199,970.00 for the hearings by checks made payable to the Lexington County Probate Court. Johnson remitted $97,307.89 to Lexington County. Johnson spent the remaining funds at his own discretion. Some of the funds were spent on items relating to the probate court; however, other funds were spent on salary supplements, out of state conference expenses for his wife, and insurance and repairs on his automobiles.

Following a dispute between Johnson and Lexington County regarding the ownership of these funds, the South Carolina Law Enforcement Division conducted an audit of the funds. In October 1990, the Supreme Court, deciding statutory law, required Johnson to remit all of the funds to Lexington County and publicly reprimanded Johnson for misappropriating public funds.[2] In November 1990, a Lexington County grand jury indicted Johnson on three counts of misconduct in office, one count of breach of trust with fraudulent intent, and one count of embezzlement. In December 1990, the Governor removed Johnson from office. In March 1991, Johnson pled nolo contendere to two counts of official misconduct.

After its investigation, the public reprimand, and Johnson's pleas, Lexington County sought reimbursement from American Fire, as surety of a public official bond held on Johnson. The bond secured the true and faithful performance of Johnson's duties as probate judge. American Fire settled the claim for $30,000.00.

---

2. *See In the Matter of Johnson,* 302 S.C. 532, 397 S.E.2d 522 (1990).

In response to American Fire's indemnity suit against him, Johnson counterclaimed for bad faith payment of the bond claim alleging that the funds were his to use in his discretion, that Lexington County suffered no damages, and acquiesced in his use of the funds. Following the close of evidence, the trial court directed a verdict in favor of American Fire on its indemnity claim and on Johnson's counterclaim.

## STANDARD OF REVIEW

In deciding a motion for a directed verdict, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party. If more than one inference can be drawn from the evidence, the case must be submitted to the jury. *Dalon v. Golden Lanes, Inc.*, 320 S.C. 534, 466 S.E.2d 368 (Ct.App.1996). However, if the evidence does not yield more than one inference, a directed verdict in favor of the moving party is proper. *Cock-N-Bull Steak House, Inc. v. Generali Ins. Co.*, 321 S.C. 1, 466 S.E.2d 727 (1996).

## DISCUSSION

Johnson first argues that American Fire acted in bad faith when it paid the claim against the bond without investigating his defenses or considering the impact of payment of the claim. Johnson further argues American Fire's conduct creates at least an inference it did not deal in good faith.

In *Nichols v. State Farm Mut. Auto., Ins. Co.*, 279 S.C. 336, 306 S.E.2d 616 (1983), our Supreme Court recognized the existence of a cause of action against an insurance company for bad faith refusal to pay first party benefits due under an insurance contract. The court further stated that "if an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action." 279 S.C. at 340, 306 S.E.2d at 619.

Subsequent cases have extended our longstanding policy that insurers must deal in good faith. *See, e.g., Carolina Bank and Trust Co. v. St. Paul Fire and Marine Co.*, 279 S.C. 576, 310 S.E.2d 163 (Ct.App.1983) (a duty of good faith and fair dealing extends to the performance of all obligations

undertaken by the insurer for the insured); *Brown v. South Carolina Ins. Co.*, 284 S.C. 47, 324 S.E.2d 641 (Ct.App.1984), *overruled on other grounds, Charleston County Sch. Dist. v. State Budget and Control Bd.*, 313 S.C. 1, 437 S.E.2d 6 (1993) (insured allowed to recover for insurer's bad faith refusal to pay a third party claim); *see also Tadlock Painting Co. v. Maryland Casualty Co.*, 322 S.C. 498, 473 S.E.2d 52 (1996) (cause of action exists for breach of the implied covenant of good faith and fair dealing by an insured against his or her insurer for consequential damages allegedly suffered because of the insurer's bad faith handling of third party claims).

▬ Bad faith is a knowing failure on the part of the insurer to exercise an honest and informed judgment in processing a claim. 16A Appleman, Insurance Law and Practice *Compensatory and Punitive Damages* § 8878.25 (1981). Under South Carolina law, an insurer acts in bad faith where there is no reasonable basis to support the insurer's decision. *Cock-N-Bull Steak House, Inc.*, 321 S.C. 1, 466 S.E.2d 727; *Dowling v. Home Buyers Warranty Corp.*, 303 S.C. 295, 400 S.E.2d 143 (1991).

Although there are no South Carolina cases which address a bad faith claim in a principal-surety relationship, this court, in *Chapman v. Citizens and Southern Nat. Bank of South Carolina*, 302 S.C. 469, 395 S.E.2d 446 (Ct.App.1990), recognized that a relationship between a principal and his surety is a confidential or fiduciary relation. This court went on to state that "the law, in order to prevent undue advantage from the unlimited confidence or sense of duty which the relation naturally creates, requires the utmost degree of good faith in all transactions between the parties." 302 S.C. at 476, 395 S.E.2d at 451.

▬ Pursuant to S.C.Code Ann. § 14–23–40 (1985), superseded by § 14–23–1050 (Supp.1997), Johnson secured this public official fidelity bond. By its terms, the bond created a principal and surety relationship between Johnson and American Fire. *See First National Bank of Greenville v. U.S. Fidelity & Guaranty Co.*, 207 S.C. 15, 35 S.E.2d 47 (1945); *see also* 13 Couch on Insurance 2d *Fidelity Guarantee Contracts* § 46:2 (1982). Further, the execution of the bond resulted in a tripartite relationship with Lexington County as insured (or

obligee), Johnson as principal and American Fire as surety. 74 Am.Jur.2d *Suretyship,* § 3 (1974). Under the terms of the bond, Johnson agreed to indemnify and hold harmless American Fire from all liability it incurred to the county resulting from his defalcations in office. Johnson's obligation to indemnify, therefore, is coextensive with that of American Fire to reimburse the county. 35 Am.Jur.2d *Fidelity Bonds and Insurance,* § 102 (1967).

■ Although Johnson characterizes American Fire's actions as the mishandling of a third party claim, we do not view it in that fashion inasmuch as the county was a party to the bond, not a stranger to it. *See* 35 Am.Jur.2d *Fidelity Bonds and Insurance,* § 101 (1967). Thus, the county received payment from American Fire as a first party payee. We find the *Tadlock Painting Co.* case, on which Johnson relies, unavailing to his position.

■ Because American Fire has sued Johnson on a coextensive provision of the fidelity bond, we see no reason why Johnson may not assert as a defense that American Fire breached its covenant of good faith and fair dealing in the manner in which it handled payment of the county's claim. However, the question of whether the rationale of *Nichols* should be extended to provide Johnson a cause of action in tort against the insurance company for breach of its duty of good faith and fair dealing in the payment of the county's claim, is a different matter that need not be answered by us at this time. Assuming our Supreme Court would approve such a cause of action, the facts of this case do not support Johnson's claim that the surety acted in bad faith or dealt unfairly with him in paying the bond. It is undisputed that American Fire paid the county's claim only after the Supreme Court reprimanded Johnson, the grand jury indicted him, the Governor removed him from office, and Johnson pled nolo contendere to two counts of official misconduct in office.

Additionally, there is no indication that further investigation of Johnson's claims by American Fire would have changed the results. Johnson first argues the funds were his to be used in his discretion. In its reprimand, however, the Supreme Court found Johnson was required by the applicable statutes to remit the subject funds to Lexington County. Next, Johnson

argues the funds were used to benefit Lexington County. Although Johnson did use some of the funds for the probate court, it is undisputed that some of the funds were used by him personally. Johnson also maintains that because there would have been no funds had he not voluntarily conducted the hearings, the county suffered no loss. Nevertheless, as held by the Supreme Court, once Johnson held the hearings in his role as probate judge, the funds became the property of the county.[3] Finally, Johnson argues the county acquiesced in his use of the funds. There is no evidence that the county acquiesced in the personal use of the funds by Johnson.

On review, we find the issue is whether American Fire acted unreasonably and in bad faith in paying on the bond. The only reasonable inference to be drawn from the evidence is that American Fire did not act in bad faith nor unreasonably in paying the county's claim under the bond. Thus, we find no error in the trial court's decision to direct a verdict in favor of American Fire on its indemnity claim and on Johnson's counterclaim.

**AFFIRMED.**

GOOLSBY and HEARN, JJ., concur.

---

3. *In the Matter of Johnson,* 302 S.C. at 534, 397 S.E.2d at 523.