HAZOURI, J.
Stephen Babic, M.D. and Boca Raton Cardiology Associates, Inc., P.A. a/k/a Ba-bic and Vinci and Lieberman, P.A. (Babic) appeal from the granting of a final summary judgment in favor of Physicians Protective Trust Fund (PPTF), Michael Lynch (Lynch) and Eliot H. Berg, M.D. (Berg). We affirm the granting of the final summary judgment.
Babic’s amended complaint arises from and is based upon the settlement of a medical malpractice law suit in which his insurance carrier PPTF determined for the purpose of settlement that he was the sole physician responsible for the alleged medical malpractice. The amended complaint includes four counts against all three defendants. Count I alleges breach of the indemnity agreement between PPTF and Babic, and unfair claims settlement practices. Count II alleges bad faith, fraud, and conspiracy with unknown others to defraud. Count III alleges a breach of an insurance carrier’s fiduciary duty to its insured. Count TV alleges a cause of action for libel and intentional infliction of emotional distress.

FACTS

The underlying medical malpractice suit was initiated by Lillian Jacobson (Jacobson) against four doctors including Babic. All the defendant doctors were insured by PPTF. When Jacobson served her notices of intent to initiate a medical malpractice suit, PPTF, through Medical Risk Consultant Group, an independent contractor, reviewed Jacobson’s claim and, in the early stages of the proceedings, determined that the claim was defensible and that the four doctors had equal liability exposure. This review was called the Claims Review and Consultation (CRAC) investigation.
PPTF retained separate lawyers to defend each of the doctors and attorney Karl Santone (Santone) was hired to defend Ba-bic. In January 1991, Santone had determined and notified PPTF that his client, Babic, had only a 20-26% chance of prevailing and that the other defendants were likely to be found free of fault. One of Santone’s cardiology experts had initially been supportive of Babic’s care of Jacobson but later reversed himself and opined that Babic was in fact negligent.
In February 1991, Maryanne Lynne (Lynne) from the Medical Risk Consultant Group prepared a Settlement Authority Memorandum (SAM). Lynne reviewed at *444 length the facts, the opinions of both plaintiffs and defendants’ experts, and San-tone’s evaluation. Based upon- these items, Lynne concluded that the case was worth $500,000 and that Babic would be found primarily at fault. Lynne requested settlement authority in the amount of $500,000 on behalf of Babic. Lynch, who was a claim supervisor, reviewed Lynne’s report and concurred in her assessment. At all times material to the claim for medical malpractice, Babic’s limits of liability were $2,000,000/$4,000,000.
The next step in the claims process was referral of the claim to Robert White, PPTF’s director of claims and loss prevention. After reviewing the SAM and Lynch’s recommendation, White submitted his recommendation to the board of trustees claims committee. He concluded that Babic was 100% at fault and that the case had a value of $500,000. The claims committee followed White’s recommendations and determined that Jacobson’s claim should be settled for $500,000 against Ba-bic. Berg was chairman of the board of PPTF but did not participate in the claim committee’s decision.
In May 1991, the medical malpractice suit of Jacobson was settled for $500,000. The release that was executed was prepared by Santone and provided that in consideration for $500,000 paid by. PPTF, Babic and the other three doctors and their respective professional associations were all released. It further stated that:
It is understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that this settlement is not to be construed as an admission of liability on the part of PHYSICIANS PROTECTIVE TRUST FUND, PHILLIP FALLEN, M.D.; PHILLIP FALLEN, M.D., P.A.; STEPHEN BABIC, M.D.; BOCA RATON CARDIOLOGY ASSOCIATES, M.D., P.A., a/k/a BABIC, VINCI and LIEBERMAN, P.A.; ROBERT SCHIF-TAN, M.D.; ROBERT SCHIFTAN, M.D., P.A.; ■ GERALD E. SCHMIDT, M.D. -and GERALD E. SCHMIDT, M.D., P.A., only.
Under federal and state statutes, PPTF is required to report settlements of malpractice claims. In its report of the settlement, PPTF stated that payment was charged solely to Babic’s file. PPTF filed the requisite forms with the National Practitioners Data Bank (NPDB) and Florida’s Department of Professional Regulation (DPR).
The DPR’s Closed Claim Reporting Form lists Babic as the health care provider being reported. It also lists the other defendants and that the patient contended that the failure to timely re-start coumadin (a blood thinner) by Drs. Babic, Fallen and Schiftan caused her to suffer a CVA (cere-brovascular accident). Nowhere' on the form does it specifically say that Babic was 100% liable or even the amount of the settlement. The federal Medical Malpractice Payment Report requires that the amount of the settlement and on whose behalf the money is paid be reflected in the report.
The gist of Babic’s causes of action as reflected in the amended complaint is as follows:
a. By failing to provide truthful and accurate information to the Florida Department of Professional Regulations and the National Practitioners Data Bank regarding the terms of the Jacobson case settlement;
b. By failing to accurately disclose, inform and/or report to the Florida Department of Professional Regulations and the National Practitioners Data Bank the actual terms and conditions of the Jacobson case settlement, in order to prevent and protect all defendant health care providers, except BABIC, from being reported;
c. By making misrepresentations and/or statements that it knew, or reasonably should have known, were false, untrue and/or inaccurate, to the Florida Department of Professional Regulations *445 and the National Practitioners Data Bank regarding the terms and conditions of the Jacobson case, including without limitation, that the $500,000 settlement was against Babic, only, when in fact, the Jacobson case settlement was expressly made against all Defendants, with no apportionment of payment, and acknowledgment that it involved a doubtful and disputed claim, and that it was not to be construed as an admission of liability against any party; and
d. By engaging in acts and conduct calculated and known, or which reasonably should have been known, would injure and/or harm the Plaintiffs, BABIC, BRCA AND VL, P.A., beyond that which was stated in the settlement and/or contemplated under the Indemnity Agreement.

ANALYSIS

Under the indemnity agreement with PPTF, Babic admits that PPTF had the right to settle the Jacobson case as it deemed expedient with or without Babic’s consent or approval. Section 627.4147, Florida Statutes (1991), provides that it is against public policy for any medical malpractice insurance contract to contain a clause giving the insured the exclusive right to veto any offer for admission of liability and for arbitration, settlement offer or offer of judgment, when such offer is within the policy limits. However, any offer of admission of liability, settlement offer, or offer of judgment made by an insurer or self-insurer shall be made in good faith and in the best interests of the insured.
In Shuster v. South Broward Hospital District Physicians’ Professional Liability Insurance Trust, 591 So.2d 174 (Fla.1992), the supreme court held that absent unusual circumstances (not applicable here) a cause of action for breach of a good faith duty owing to an insured will not lie for failure to defend or investigate a claim when the insurer has settled the claim for an amount within the limits of the insurance policy.
Babic concedes that the defendants are not guilty of bad faith or improper conduct in settling the underlying medical malpractice case. Babic does not contend that he was not at least in part to blame for Jacobson’s injuries. He contends, however, that the defendants falsely or inaccurately reported the allocation of all the liability and payment to him and that creates a material issue of fact as to whether the defendants acted in bad faith and failed to act in his best interest.
Under section 627.912, Florida Statutes (1991), insurers are required to report settlements to the DPR. Pertinent portions of that section provide:
(1) Each self-insurer authorized under s. 627.357 and each insurer or joint underwriting association providing professional liability insurance to a practitioner of medicine licensed pursuant to the provisions of chapter 458 ... shall report in duplicate to the Department of Insurance any claim or action for damages for personal injuries claimed to have been caused by error, omission, or negligence in the performance of such insured’s professional services or based on a claimed performance of professional services without consent, if the claim resulted in:
[[Image here]]
(b) A settlement in any amount.
[[Image here]]
(4) There shall be no liability on the part of, and no cause of action of any nature shall arise against, any insurer reporting hereunder or its agents or employees or the department or its employees for any action taken by them pursuant to this section.
There are no cases which discuss this statute but the language of subsection (4) is crystal clear that there can be no liability on the part of any of the defendants arising from the reporting of this settlement. The obvious purpose of the immunity is to *446 encourage unfettered reporting of incidents of alleged medical malpractice without the fear of civil liability.
Under section 11131 of the Health Care Quality Improvement Act, 42 U.S.C. § 11101 et seq., PPTF is required to report medical malpractice settlements to the NPDB. The information required includes the name of the physician for whose benefit the payment was made, the amount paid and a description of the acts or omissions upon which the claim was based. See 42 U.S.C. § 11131(b)(1991).
Section 11137(c) provides:
No person or entity (including the agency designated under section 11134(b) of this title) shall be held liable in any civil action with respect to any report made under this subchapter (including information provided under subsection (a) of this section[) ] without knowledge of the falsity of the information contained in the report.
As in section 627.912, Florida Statutes (1991), no person or entity can be held liable in any civil action with respect to any report under this section. However, unlike the state statute, section 11137(c) does not grant immunity if there is knowledge of falsity of the information contained in the report. There is no genuine issue of material fact that there is knowledge of the falsity of the information contained in the report. The report clearly reflects the fact that there was a claim of medical malpractice asserted against Babic and PPTF concluded that he was likely to be found 100% responsible and the claim was settled for $500,000. There is no “falsity of information” in this report. This is not a situation where PPTF has falsely reported a claim and a settlement for Babic which never existed.
As stated earlier, Babic does not contend that the defendants have falsely accused him of medical malpractice, he is simply dissatisfied with the allocation of fault and wants to spread the blame. We affirm the trial court’s granting of the final summary judgment.
GUNTHER and GROSS JJ., concur.