347 S.C. 642 (2001)
557 S.E.2d 670
John DOE, M.D., Respondent/Appellant,
v.
SOUTH CAROLINA MEDICAL MALPRACTICE LIABILITY JOINT UNDERWRITING ASSOCIATION, Appellant/Respondent.
No. 25394.
Supreme Court of South Carolina.
Heard October 23, 2001.
Decided December 31, 2001.
*645 Harold W. Jacobs, of Nexsen Pruet Jacobs & Pollard, L.L.P., of Columbia, for appellant/respondent.
Ray P. McClain, of Charleston, for respondent/appellant.
James B. Richardson, Jr., of Richardson & Birdsong, of Columbia for amici curiae, South Carolina College of Emergency Physicians, American College of Emergency Physicians, and South Carolina Medical Association.
PLEICONES, Justice
Appellant/Respondent South Carolina Medical Malpractice Liability Joint Underwriting Association ("JUA") appeals the circuit court's decision prohibiting JUA from apportioning any part of a settled claim against the liability policy of Respondent/Appellant John Doe, M.D. ("Doe"). Doe appeals the circuit court's denial of attorney's fees. We reverse the trial court's decision enjoining JUA from including Doe in the settlement apportionment and affirm the trial court's denial of attorney's fees.

STANDARD OF REVIEW
Doe captioned his complaint as a declaratory judgment action. In his initial prayer for relief he sought a permanent injunction against JUA and a declaration that JUA committed breach of contract. "A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue." Felts v. Richland County, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). "Actions for injunctive relief are equitable in nature. In equitable actions, the appellate court may review the record and make findings of fact in accordance with its own view of a preponderance of the evidence." Wiedemann v. Town of Hilton Head Island, 344 S.C. 233, 236, 542 S.E.2d 752, 753 (Ct.App.2001) (internal citations omitted).
Pursuant to the "main purpose rule," in actions praying for both money damages and equitable relief, "characterization of the action as equitable or legal depends on the plaintiff's `main purpose' in bringing the action." Floyd v. Floyd, 306 S.C. 376, 380, 412 S.E.2d 397, 399 (1991). Doe's main purpose in instituting this action was to enjoin JUA from *646 charging any of the settlement against his policy.[1] Thus, the "main purpose" of Doe's action was equitable in nature. Accordingly, the factual findings of the trial court are not binding on this Court, and we may take our own view of the facts. Wiedemann, supra.

FACTS/PROCEDURAL HISTORY
Doe filed suit against his professional liability insurance carrier, JUA, following settlement of a medical malpractice lawsuit against Doe and a number of other defendants, and JUA's decision to charge a portion of the settlement to Doe's policy. Although the record does not indicate that JUA's decision had any direct adverse financial consequences to Doe, the record does reveal that as a result of its decision to charge Doe's policy, JUA reported Doe to the National Practitioner Data Bank as required by federal law.[2] Doe testified that being reported to the National Practitioner Data Bank has adverse effects on a healthcare professional's ability to participate in certain healthcare organizations and to practice in certain areas.
Doe sought a declaration "that [JUA's] duty to its insured requires that it have a fair procedure, in cases involving many providers all insured by JUA, to enable a physician to challenge [JUA's] decision to charge a portion of [any] settlement to the physician's policy." In addition, he sought damages for breach of contract and attorney's fees incurred in prosecuting the action.
Doe's complaints grew out of a medical malpractice action brought against him and several co-defendants following the death of Louise Stanton ("Stanton"). While a patient in the intensive care unit at Bon Secours St. Francis Xavier Hospital in Charleston, Stanton experienced respiratory distress, and a doctor Mayday was sounded. Doe, at the time on duty in the hospital's emergency department, and several other healthcare professionals responded to the Mayday. Among those responding *647 to the Mayday was Dr. Ball ("Ball"). When the Mayday sounded, Ball was in the hospital visiting another patient. He was not otherwise "on duty" at Bon Secours at the time.
Eventually, the doctors and nurses who responded to the Mayday determined that the cause of Stanton's distress was an improperly placed endotracheal tube. The tube had been inserted to assist Stanton's breathing. After the tube was removed and replaced, Stanton's respiratory distress subsided. Unfortunately, by the time the tube was replaced, Stanton had been deprived of oxygen for twelve minutes and was brain dead. She died two days later.
A certified registered nurse anesthetist ("CRNA"), Geri Wern Wood ("Wood"), was among those responding to the Mayday. Wood testified in a deposition that upon arriving at Stanton's bedside, she listened for breath sounds from the patient. She heard breath sounds in the stomach, suggesting the endotracheal tube might be misplaced, and asked Doe to listen. According to Wood, Doe listened and appeared to be confused by what he heard. Wood announced her opinion to all present in the hospital room that the tube was not in the proper position, and that she thought Stanton should be reintubated. Finally, Wood testified that some ten minutes later, the responding physicians determined Stanton should be reintubated.
JUA insured all co-defendants in the malpractice action. It hired separate counsel to defend Doe. After discovery had commenced, JUA and Stanton's estate settled the claims against all defendants for $500,000. After the case settled, Doe and Ball approached JUA and requested that no portion of the settlement be charged against their respective policies. Both doctors claimed they were immune from liability pursuant to the Good Samaritan statute, S.C.Code Ann. § 15-1-310 (1977).[3] JUA's manager, Calvin Stewart ("Stewart") testified that when settling a case involving multiple defendants, it was *648 JUA's policy not to charge the policy of any defendant who, as a matter of law, could prevail at trial.
In response to the doctors' requests JUA sought a legal opinion from attorney William L. Pope ("Pope") whether § 15-1-310 would apply to Doe. In Pope's opinion Doe's § 15-1-310 immunity could not be established as a matter of law, but was a question of fact. Pope further posited that Ball had a better argument than Doe that § 15-1-310 shielded him from liability. However, Pope stopped short of saying, as a matter of law, that even Ball came within the ambit of § 15-1-310. Pope explained that he distinguished between Doe and Ball, and the relative strength of their § 15-1-310 defenses, because Doe was being "paid by the hospital to be present at the hospital when he responded to the [Mayday]."
Relying on Pope's legal opinion, JUA did not charge any portion of the settlement against Ball's policy. JUA did charge one-seventh of the $500,000 against Doe's policy.[4] After JUA declined Doe's request to reconsider its decision, he instituted this action.
The trial court found that JUA breached the covenant of good faith and fair dealing by failing to utilize a fair procedure by which the interests of an insured physician can be considered when his policy is to be charged in a settlement, and by failing to treat each physician equally when exercising its discretion in determining liability for doctors under settlement agreements. The court further concluded there was no evidentiary basis for JUA's conclusion that Doe's circumstances were "significantly different" from those of Ball, and therefore, JUA breached "its duties to Dr. Doe when it charged a portion of the settlement to Dr. Doe's liability policy without affording Dr. Doe the same discretionary benefit that it had provided [Ball]." The court denied Doe's request for attorney's fees.
From this order, both parties appealed.

*649 ISSUE
Did the trial court err in concluding JUA breached its covenant of good faith and fair dealing by including Doe in the settlement apportionment?
JUA argues the trial court erred when it determined JUA breached its covenant of good faith and fair dealing. We agree.
We have held that
there is an implied covenant of good faith and fair dealing in every insurance contract `that neither party will do anything to impair the other's rights to receive benefits under the contract.' ... [I]f an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action.... `Implicit in the holding is the extension of a duty of good faith and fair dealing in the performance of all obligations undertaken by the insurer for the insured.'
Tadlock Painting Co. v. Maryland Cas. Co., 322 S.C. 498, 500-01, 473 S.E.2d 52, 53 (1996) (internal citations omitted).
"Bad faith is a knowing failure on the part of the insurer to exercise an honest and informed judgment in processing a claim.... [A]n insurer acts in bad faith where there is no reasonable basis to support the insurer's decision." American Fire & Cas. Co. v. Johnson, 332 S.C. 307, 311, 504 S.E.2d 356, 358 (Ct.App.1998); see also Cock-N-Bull Steak House v. Generali Ins. Co., 321 S.C. 1, 466 S.E.2d 727 (1996).
Furthermore, "a liability insurer owes its insured a duty to settle a personal injury claim covered by the policy, if settlement is the reasonable thing to do." Trotter v. State Farm Mut. Auto. Ins. Co., 297 S.C. 465, 475, 377 S.E.2d 343, 349 (Ct.App.1988). An insurer who unreasonably refuses or fails to settle a covered claim within the policy limits is liable to the insured for the entire amount of the judgment obtained against the insured regardless of the limits contained in the policy. Id.
The contract of insurance between Doe and JUA provides in part that JUA "shall have the right and duty to defend in his name and behalf any suit against the Insured alleging damages, *650 even if such suit is groundless, false or fraudulent, but [JUA] shall have the right to make such investigation and settlement of any claim or suit as may be deemed expedient[5] by [JUA]."
The trial court determined that JUA breached its covenant of good faithnot by refusing to settlebut by unreasonably charging Doe's policy with a portion of the settlement, or more specifically, by not providing Doe some avenue for input regarding JUA's apportionment decision.
Although our research reveals no cases addressing the narrow issue raised by Doe, we are guided by a number of cases addressing an insurer's duty to its insured when settling a liability claim against the insured.
In Babic v. Physicians Protective Trust Fund, 738 So.2d 442 (Fla.Dist.Ct.App.1999), the insured sued his insurer after the insurer settled a medical malpractice action brought against four of its insured physicians. After reaching the settlement agreement, the insurer charged the entire settlement amount against Babic's policy. It made this decision in light of evidence that Babic was more at fault than the doctors released. As required by federal and state law, the insurer reported Babic to the National Practitioner Data Bank, as well as to a state data bank.
The Florida Court of Appeals observed that the plaintiff "does not contend that the defendants have falsely accused him of medical malpractice, he is simply dissatisfied with the allocation of fault and wants to spread the blame." Id. at 446. The court recognized that "any offer of admission of liability, settlement offer, or offer of judgment made by an insurer or self-insurer shall be made in good faith and in the best interests of the insured." Id. at 445. Notwithstanding this obligation, "absent unusual circumstances (not applicable here) a cause of action for breach of a good faith duty owing to an insured will not lie for failure to defend or investigate a claim *651 when the insurer has settled the claim for an amount within the limits of the insurance policy." Id.
In support of its decision, the Babic court cited Shuster v. South Broward Hosp. Dist. Physician' Prof. Liab. Ins. Trust, 591 So.2d 174 (Fla.1992). In that case Shuster challenged his liability carrier's decision to settle a number of claims against him. He alleged that the insurer failed to investigate the claims, and despite his protestations, settled the suits for amounts substantially in excess of reasonable settlement values.
The contract at issue in Shuster contained an endorsement, similar to the contract in this case, giving the insurer the authority to "make such investigation and such settlement of any claim or suit as it deems expedient." Id. at 176. According to the court,
[t]he language of th[is] provision is clear and the insured was put on notice that the agreement granted the insurer the exclusive authority to control settlement and to be guided by its own self-interest when settling the claim for amounts within the policy limits. The obvious intent behind placing the provision in the agreement was to grant the insurer the authority to decide whether to settle or defend the claim based on its own self-interest, and this authority includes settling for the nuisance value of the claim. Therefore, we interpret the provision as granting the insurer the discretion to settle cases for amounts within the policy limits, regardless of whether the claim is frivolous or not. The parties have expressly contracted with respect to the subject matter and this Court declines to rewrite the policy when the insurer merely exercises its rights under the agreement....
We recognize that every contract requires the good faith performance of its provisions. However, the act of settling a claim either for nuisance value, or for an amount lower than the actual value of the suit, is not bad faith performance of the right to settle as one `deems expedient.'
Id. at 176-77 (internal citations omitted).
Other courts have reached similar conclusions where an insured has challenged an insurer's decision to settle a claim. See generally Mitchum v. Hudgens, 533 So.2d 194 (Ala.1988) *652 (insurer's exclusive right to settle claims against its insured imposes a duty raised by law to observe ordinary diligence in exercising that right; this duty does not compel the insurer to seek the insured's permission before settling a claim); Frankel v. St. Paul Fire & Marine Ins. Co., 334 N.J.Super. 353, 759A.2d 869 (App.Div.2000) (bad judgment on the part of the insurer does not constitute bad faith given the insurer's broad discretion in disposing of third party claims); Cash v. State Farm Mut. Auto. Ins. Co., 137 N.C.App. 192, 528 S.E.2d 372 (2000) (recognizing that an insurer, when settling claims with a third party, acts in its own self-interest); Marginian v. Allstate Ins. Co., 18 Ohio St.3d 345, 481 N.E.2d 600 (1985) (where a contract of insurance provides that the insurer may, as it deems appropriate, settle any claim or action brought against its insured, a cause of action alleging a breach of the insurer's duty of good faith will not lie where the insurer has settled such claim within the monetary limits of the policy).
Doe does not challenge JUA's decision to settle the claims against him, only its decision to charge a portion of the settlement against his policy. We hold that such decisions are subject to the covenant of good faith and fair dealing, and that in order to prevail, the party challenging these decisions must show bad faith on the part of the insurer. See Tadlock Painting Co., supra. To hold otherwise would impose upon an insurer a potentially greater obligation when determining how a settlement is to be apportioned among multiple insureds than the obligation imposed by law when deciding to settle the case initially.
The evidence presented below does not support a finding of bad faith on the part of JUA. The contract unambiguously grants JUA the authority to settle all claims arising under the policy, even claims that are groundless or fraudulent. The law imposes upon JUA a duty to settle within policy limits when settlement is reasonable. Here, JUA was faced with the testimony of CRNA Wood, an eyewitness, trained in the healthcare profession, attesting to Doe's negligence. JUA requested an opinion from counsel whether § 15-1-310 would effectively shield a similarly situated physician from liability. Counsel offered his opinion that Doe's § 15-1-310 defense would be dependent upon the jury's view of the facts.
*653 Under these circumstances, JUA's decisions to settle the case on behalf of Doe and to charge a portion of the settlement against his policy were eminently reasonable. Because Doe has not shown that JUA's decision was made in bad faith, we reverse the trial court's determination that JUA breached the covenant of good faith and fair dealing.[6]See American Fire & Cas. Co. v. Johnson, supra.
Based on our finding that JUA did not act in bad faith, we affirm the trial court's order denying Doe attorney's fees.

CONCLUSION
For the foregoing reasons, the order of the circuit court is REVERSED IN PART AND AFFIRMED IN PART.
TOAL, C.J., MOORE, WALLER and BURNETT, JJ., concur.
NOTES
[1] Although in his complaint Doe prayed for money damages in an unspecified amount, he made no offer of proof of any such damages at trial, nor did the trial court award him any money damages.
[2] See 42 U.S.C. § 11131 (West 1995). The report provided Doe with an opportunity to recount his version of the underlying incident.
[3] Section 15-1-310 provides that one who gratuitously provides emergency care at the scene of an accident or emergency shall not be liable for damages for personal injury arising out of the provider's negligence. The statute does not insulate the care giver from liability for damages resulting from gross negligence or wilful misconduct.
[4] The amount charged against Doe's insurance totaled $71,428.57. That same amount was charged against each of the other six defendants' policies.
[5] Webster's New World College Dictionary 500 (Michael Agnes, ed., 4th ed., Macmillian 1999), provides the following definitions of "expedient": "1 useful for effecting a desired result; suited to the circumstances or the occasion; advantageous; convenient[.] 2 based on or offering what is of use or advantage rather than what is right or just; guided by self-interest; politic...."
[6] Nothing in this opinion is to be construed as a determination of Doe's status as a Good Samaritan under § 15-1-310. However, even if we were to assume that Doe acted gratuitously in rendering services to Stanton, § 15-1-310 does not provide a defense for gross negligence. Wood's testimony alone may have been sufficient to require the trial court to instruct the jury on gross negligence.