[ PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 29, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-14866

_____

D. C. Docket No. 99-00935-CV-D-N

TWIN CITY FIRE INSURANCE COMPANY,

Plaintiff-Counter-
Defendant-Appellant,

THE HARTFORD CASUALTY INSURANCE COMPANY,

Plaintiff-
Counter-Defendant,

versus

COLONIAL LIFE & ACCIDENT INSURANCE COMPANY,

Defendant-Counter-
Claimant-Appellee,

BUD PORTER, LUCAS WHITE,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(JUNE 29, 2004)


Before BLACK and RONEY, Circuit Judges, and STROM*, District Judge.

PER CURIAM:

This is an appeal from a judgment in the amount of $75,000 compensatory damages and $675,000 punitive damages against an insurance company which the district court found had acted in bad faith in connection with the settlement of a case against its insured, the defense of which the insurance company had undertaken with a reservation of rights. The alleged act of bad faith involved the insurance company's initial offer to contribute $75,000 toward a large settlement of a case against its insured, and then "inexplicably" withdrawing that offer pending settlement negotiations. The district court, in a declaratory decree action, held that the insurance company's policy did not cover the underlying claim, but then, on a counterclaim by the insured, found that the insurance company was nonetheless liable for bad faith in failing to contribute to the settlement. We reverse for two alternative reasons: *first*,

_____

\* Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

2

there was no proven damage to the insured to support the compensatory damage award to the insured, and without damage there was no basis for imposing punitive damages; and *second*, since there was no coverage under the insurance policy for the claim, there could be no duty to contribute to a settlement of the claim, and therefore no bad faith claim for the insurance company's refusal to so contribute.

Both parties to this lawsuit are insurance companies. The appellant insurance company that issued the policy is The Twin City Fire Insurance Company, a subsidiary of The Hartford Casualty Insurance Company, a Connecticut corporation (collectively referred to as "Twin City"). The appellee insurance company that was the insured under that policy is Colonial Life & Accident Insurance Company ("Colonial"), a South Carolina corporation. Colonial maintained commercial general liability policies ("CGL") from three general liability carriers at the time the underlying lawsuit was filed against it. Twin City was one of those insurance companies.

The underlying lawsuit against Colonial was filed in Alabama state court by Lucas White, an Alabama-based insurance salesman, on June 12, 1997. White alleged that he had a lifetime employment contract with Colonial but was fired when Colonial reassigned some of his accounts and restructured the workplace. Colonial timely notified Twin City of White's lawsuit. Twin City thereafter joined Colonial's

3

other two CGL insurance carriers to defend Colonial under a reservation of rights. Twin City authorized Colonial to engage counsel to defend Colonial in the *White* lawsuit. In a letter dated August 25, 1997, Mario Gonzalez, Twin City's Claim Service Consultant, wrote, "we will accept to pay for the defense of the case from the time that the claim was received in our office which is June 24, 1997. It is my suggestion that you immediately retain legal counsel of your choice in order to provide an answer to the complaint . . .."

In 1999, while White's underlying Alabama state lawsuit was pending, Twin City filed a complete diversity complaint seeking a declaratory decree in the Middle District of Alabama that it had neither a duty to defend nor a duty to indemnify Colonial in the *White* lawsuit under the insurance policy. In April 2000, intense settlement negotiations took place in the *White* lawsuit. The following events transpired that April. On April 5, 2000, White's attorney sent a settlement demand letter for approximately $1.5 million specifying an April 15 deadline to Attorney Laura Nettles, an attorney from the law firm of Lloyd, Gray & Whitehead, P.C. engaged by Colonial for its defense in the *White* lawsuit but paid by Twin City and the other CGL carriers. Stephen Whitehead of that law firm orchestrated much of the settlement negotiations. Nettles forwarded White's April 5 demand letter to Gonzalez at Twin City on April 7, stating, "Obviously we are disappointed that the number is

4

so high.  I would appreciate it if you would contact me after you have had an opportunity to review this letter to advise whether you want to make any type of responsive offer."

On April 14, Colonial's Vice President & Managing Counsel, L. Kennedy Boggs, sent a letter to the three CGL insurance carriers, including Twin City, demanding that "you settle this action within the policy limits."  On April 17, Attorney Nettles transmitted a detailed pre-trial report to Colonial and the three CGL insurance carriers, advising them that Colonial had only a 30% chance for a defense verdict and that Colonial could "sustain a verdict of over $10,000,000 in both punitive and compensatory damages."  On April 19, Twin City's Mario Gonzalez authorized Attorney Nettles to make a contribution toward the settlement pool of $75,000.  On that same day, Colonial made a $100,000 contribution to the settlement pool.  The remaining two CGL insurance companies contributed $225,000 toward the settlement, for a settlement pool totaling $400,000.  These contributions were made with the understanding that all insurance coverage disputes would be resolved and "none of the liability insurers would seek to recover from Colonial any additional sums or recoupment of any sums previously paid."  Specifically, Attorney Nettles contacted Gonzalez demanding a "firm unconditional contribution towards an initial counteroffer to try to settle the Luke White case and that would waive any declaratory

5

[judgment] action or coverage dispute in the Luke White lawsuit for purposes of getting Colonial to participate." Twin City's $75,000 contribution was thus made "with no strings attached, waiving any coverage issues at this level." On April 26, White refused the $400,000 settlement offer, and White's attorney communicated that White was not willing to negotiate any settlement until an offer of $1,000,000 had been made.

The next day, on April 27, White entered a formal counteroffer of $1.3 million, which prompted Whitehead to request additional contributions from Colonial and two of the three CGL insurance companies. Specifically, Whitehead requested a contribution of $150,000 from Twin City. At some point on that same day, Twin City made an internal decision to withdraw its $75,000 contribution toward the settlement pool. This contribution withdrawal was communicated by Gonzalez to Attorney Nettles the next day, on April 28. Colonial then increased its contribution amount to $600,000, making up the $75,000 that was withdrawn by Twin City, and, combined with the remaining two insurance companies, $1.1 million was raised and offered to White. White accepted that offer on that same day, which was three days before trial was scheduled to commence. There is no record evidence that the case could have settled for any less amount, nor does Colonial so contend.

On May 17, 2000, Colonial filed a three-count counterclaim to Twin City's complaint for declaratory judgment, alleging that Twin City had acted in bad faith during the settlement negotiations in White's underlying case, causing it both compensatory and punitive damages. The counterclaim alleged breach of duty of good faith and fair dealing (*i.e.*, bad faith), fraud, bad faith breach of enhanced duty, and breach of contract, asserting:

> [Twin City] negligently, recklessly, and/or intentionally breached the duty of good faith and fair dealing during the handling of the Luke White case including but not limited to withdrawing on the Friday before trial their previous monetary commitment to settlement offers and by abandoning their earlier agreement to participate in settlement efforts. . . . As a proximate result of the breach of these duties, Colonial was injured and damaged.

A two-day bench trial was held in the district court addressing both Twin City's complaint for declaratory judgment and Colonial's counterclaims. At the conclusion of the trial and after the district court issued provisional findings of fact, it certified questions to the Alabama Supreme Court to clarify whether South Carolina or Alabama law applied to the asserted counterclaims. The Alabama Supreme Court answered that "claims alleging a breach of the enhanced duty of good faith are

7

contract claims" and the law of South Carolina, the location where the insurance policy was issued, applies. *Twin City Fire Ins. Co. v. Colonial Life & Accident Ins. Co.*, 839 So.2d 614, 616 (Ala. 2002).

The district court ultimately issued a memorandum opinion declaring that the insurance policy issued by Twin City to Colonial did not cover the claims asserted in the *White* lawsuit. The court held, "The insurance policy applies only to 'personal injuries or to occurrences' that lead to 'bodily injury.' White suffered neither personal injury nor bodily injury." It also concluded that because there was no underlying coverage, had Twin City contributed to the settlement, it could have been reimbursed by Colonial for the contribution.

On Colonial's counterclaim, after a detailed choice-of-law analysis, the district court applied South Carolina law and entered judgment on only the bad faith claim, holding that Twin City acted in bad faith when it first agreed to contribute to the settlement but then subsequently withdrew its participation. It reasoned that once an insurer assumes the defense of the case, even if there was no underlying coverage, it nonetheless owes its insured the duty to settle "if it is the reasonable thing to do." It further stated that Gonzalez, Twin City's claim representative, was too preoccupied with insurance coverage issues to be concerned with Colonial's interest as far as evaluating the lawsuit. The district court ultimately awarded Colonial $75,000 in

compensatory damages and $675,000 in punitive damages. The sole issue in this appeal is whether the district court erred in ruling for Colonial on its bad faith counterclaim.

As an initial matter, Twin City argues that the district court erred by applying South Carolina law to Colonial's bad faith counterclaim. It asserts that because bad faith is a tort under Alabama law and White's alleged injury – regardless of the type of injury – occurred in Alabama, Alabama's choice-of-law provisions specify that the district court should have applied Alabama law, the place where the alleged injury occurred. Twin City contends that because the district court determined that there was no insurance coverage in its declaratory decree, and Alabama law requires that an insured prove benefits under an insurance policy in a bad faith claim, it would have prevailed under Alabama law. Because both South Carolina and Alabama law require insurance coverage as a prerequisite for liability for a bad faith failure to settle a claim with the insurance company's money, however, we need not address this choice-of-law argument and apply South Carolina law, as did the district court. *Compare State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 318 (Ala. 1999) (applying Alabama law, and noting that one who cannot prove she was entitled to benefits under an insurance policy cannot recover on a bad faith failure to settle claim) *with Doe v. South Carolina Med. Malpractice Liab. Joint Underwriting Ass'n*,

9

557 S.E.2d 670, 674 (S.C. 2001) (applying South Carolina law, noting that "'a liability insurer owes its insured a duty to settle a personal injury claim covered by the policy, if settlement is the reasonable thing to do,'" *quoting Trotter v. State Farm Mut. Auto Ins. Co.*, 377 S.E.2d 343, 349 (S.C. Ct. App. 1988)).

## I.  Requirements for Bad Faith Claim

The Supreme Court of South Carolina has described bad faith in the insurance context as "a knowing failure on the part of the insurer to exercise an honest and informed judgment in processing a claim. . . . [A]n insurer acts in bad faith where there is no reasonable basis to support the insurer's decision." *Doe*, 557 S.E.2d at 674 (citations and quotations omitted). "[T]he elements of an action for breach of the covenant of good faith and fair dealing in an insurance contract are as follows: (1) the existence of a mutually binding contract of insurance between plaintiff and defendant; (2) a refusal by an insurer to pay benefits due under the contract; (3) resulting from the insurer['s] bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing in the contract; (4) that causes damage to the insured." *Pitts v. Jackson Nat'l Life Ins. Co.*, 574 S.E.2d  502, 512-53 (S.C. Ct. App. 2002).

## II.  Lack of Proof of Damages in Colonial's Bad Faith Counterclaim

Colonial has failed to identify any damages in this case other than paying the $75,000 portion of the settlement that it had wanted Twin City to pay.  There is no

record evidence that, had it not been for the actions of Twin City, Colonial would have been able to settle the *White* lawsuit for less than what was paid to White. The district court held that there was no coverage for Colonial under the *White* lawsuit, and that if Twin City contributed $75,000 toward the settlement pool, because of its reservation of rights, Twin City would have been entitled to reimbursement of that amount from Colonial. In other words, there is no support for the compensatory claim of $75,000 because Colonial would have had to repay the amount to Twin City. Although Twin City's offer to pay $75,000 toward a $400,000 settlement was coupled with a waiver of coverage issues, which would indicate it could not have recovered that amount from Colonial, that offer was effectively rejected when the $400,000 settlement was refused by White, and Colonial then made a demand upon Twin City for a $150,000 contribution to the settlement. It was error for the district court to award the sum to Colonial and ignore its holding that Colonial owed that sum back to Twin City. As such, no damages have been identified under the facts and circumstances of this case. *See, e.g., Ross Neely Sys., Inc. v. Occidental Fire & Cas. Co. of North Carolina*, 196 F.3d 1347, 1351 (11th Cir. 1999) (noting that an insured suffered no damages when it would have been required to reimburse its insurer for any uncovered amounts that the insurer would have advanced); *see also Pitts*, 574

11

S.E.2d at 513 (noting that an insured must show that the insurer's "breach of the implied covenant of good faith and fair dealing . . . causes damage to the insured").

Even though the *White* lawsuit could not have settled for any less amount than was paid, Colonial, seeking to support an argument that it has a claim for damages even though there was no coverage under Twin City's insurance policy, contends that the Supreme Court of South Carolina has expressly rejected the argument that an "insurer can only bring a bad faith action if the insurer has breached some express contractual provision" in *Tadlock Painting Co. v. Maryland Cas. Co.*, 473 S.E.2d 52, 54 (S.C. 1996).

*Tadlock* is clearly distinguishable from the facts and circumstances of this case. *Tadlock* recognized a cause of action for consequential damages, such as loss of business revenues due to delay in processing claims against the insured, "allegedly suffered because of the insurer's bad faith handling of third party claims." 473 S.E.2d at 55. There was no evidence here that there was any failure to properly handle the third-party claim of Lucas White against Colonial. The district court held that the claim was properly settled. No extra-contractual consequential damages were alleged as a result of the way that the *White* lawsuit was settled with White.

Since there was no compensatory damage, there is no basis for awarding punitive damages.

12

## III. Requirement of Coverage Under the Policy For Finding of Bad Faith

Twin City argues that under South Carolina law, the law applied by the district court, coverage under a policy is a prerequisite to a bad faith failure to settle claim. The argument is that the first prong of the bad faith test is not met because there was no mutually binding contract of insurance between Colonial and Twin City concerning White's claim against Colonial which is the basis of the bad faith action. In effect, it contends that the bad faith claim was simply an attempt by Colonial to get coverage of a claim for which it had not paid a premium.

Colonial contends that, even if there is no coverage under the policy, Twin City owed a duty to contribute to the settlement fund and its last minute withdrawal of the $75,000 contribution was done in bad faith, causing it to pay the $75,000 originally promised by Twin City. The question is whether an insurance company providing a defense under a reservation of rights also has a duty to make a monetary contribution for its insured toward a settlement of underlying litigation that is outside the scope of the insurance policy it had issued.

Under South Carolina law, an insurer has a duty to settle a third-party lawsuit against its insured within an insurance policy's limits if the settlement is "the reasonable thing to do." *Tyger River Pine Co v. Maryland Cas. Co.*, 170 S.E. 346, 349 (S.C. 1933) (quotation omitted); *Tiger River Pine Co. v. Maryland Cas. Co.*, 161

13

S.E. 491 (S.C. 1931) (noting that an insurance company "which assumes the duty of defending a claim owes the assured the duty of settling the claim if that is the reasonable thing to do, and that, if the insurer negligently makes no serious attempt to settle until matters are in such a shape that the claim cannot be settled as advantageously to the assured as formerly, the assured may recover of the insurer the loss so occasioned him") (quotation and citation omitted). "Of course, the rule does not apply if the [claim] is not covered by the policy." *Trotter*, 377 S.E.2d at 349. The *Trotter* court noted, "If an insurer undertaking the defense of a suit *covered by the policy* unreasonably refuses or fails to settle within the policy limits, it is liable to the insured for the amount of the judgment against him in excess of the policy limits." *Id.* (citing *Miles v. State Farm Mut. Auto. Ins. Co.*, 120 S.E.2d 217, 222 (S.C. 1961)).

Stated differently, under South Carolina law, an insurer is liable for bad faith if it fails to settle a case within the policy limits for an insurer if doing so is the reasonable thing to do and if the claim is covered by the policy. *Trotter*, 377 S.E.2d at 349. Indeed, Colonial's letter of April 14, 2000 was simply a demand to "settle this action within policy limits." The cases holding bad faith for failure to settle within policy limits, however, are not applicable here because the district court held there was no coverage, and therefore there were no "policy limits." To extend Twin City's duty to contribute under a reservation of rights to a settlement that is outside

14

the scope of its insurance agreement simply because South Carolina law, such as *Tiger River*, holds that there can be bad faith in circumstances where an insurer has failed to settle a case *"covered" by an insurance policy within the limits of that policy* if settling the same is the reasonable thing to do would unreasonably extend the obligations undertaken by insurance companies in third-party settlement negotiations.

Neither the district court nor Colonial has cited any South Carolina case that holds an insurer liable in tort for declining to contribute money toward a settlement of a third-party claim when there is no coverage of the claim under the insured's policy at all. Here, any contribution that Twin City might have made to a settlement in the *White* lawsuit, since it took the position there was no coverage under the policy, would have been realistically based on its evaluation of the coverage claim it had with Colonial and not based on the exposure of Colonial in the *White* lawsuit. Colonial confuses these two, arguing that Twin City had some duty to Colonial to compromise its coverage claim because of Colonial's exposure in the *White* lawsuit.

Twin City undertook to provide Colonial a defense under its reservation of rights to contest coverage by funding Attorneys Whitehead and Nettles to represent Colonial's interests in the *White* lawsuit. The record reveals that these attorneys, unimpeded with concern over the question of coverage, obviously complied well with an attorney's responsibility not only to provide a defense but to actively attempt to

15

settle the case, which they successfully did. Colonial has not contended that but for Twin City's conduct and its concern over its insurance coverage with Colonial, the case could have been settled for less, and the district court found that "the decision to settle, and the settlement itself, was fair and reasonable. The contributions by Colonial and the other carriers were reasonably and prudently made." In fact, the record reflects that Attorney Nettles's pre-trial report stated that Colonial had only a 30% chance for a defense verdict in the *White* lawsuit and that Colonial could "sustain a verdict of over $10,000,000 in both punitive and compensatory damages." Absent evidence the *White* lawsuit could have been settled for less, a settlement of $1.1 million suggests that Colonial's interests were not compromised.

There is simply no evidence that the dispute over Twin City's coverage of the claim overshadowed Colonial's interest in a fair settlement in the *White* lawsuit. The excess policy coverage cases relied upon by Colonial, such as *Tiger River/Tyger River*, all involve whether an insurance company has failed to settle within the policy limits, *i.e.* within the amount that is undisputedly covered by the policy. *See, e.g., Trotter*, 377 S.E.2d at 349. They do not involve the situation here where there is no coverage for the claim at all.

<u>IV. Conclusion</u>

16

Accordingly, the district court erroneously entered judgment for compensatory and punitive damages in favor of Colonial on its bad faith counterclaim.

REVERSED.