Vandeventer, Woodrow, Walpole v. All American Life

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-01-145-CV

ROBERT L. VANDEVENTER, APPELLANTS

DUANE D. WOODROW,

AND B. LEGARE WALPOLE, JR.

V.

ALL AMERICAN LIFE & CASUALTY APPELLEE

COMPANY N/K/A ALL AMERICAN

LIFE INSURANCE COMPANY

------------

FROM THE 17
TH
 DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  INTRODUCTION

This case involves an insurance dispute over an assumption agreement whereby a block of disability policies was transferred and sold by the insurer that issued the policies to another insurer that later cancelled them.  Appellants Robert L. Vandeventer, Duane D. Woodrow, and B. Legare Walpole, Jr. appeal from the trial court’s grant of summary judgment to Appellee All American Life & Casualty Company n/k/a All American Life Insurance Company (“All American”).  

II.  ISSUES

Appellants raise three issues on appeal in support of their position that the trial court erred in granting All American’s motion for summary judgment.  First, Appellants contend that All American failed to establish as a matter of law its affirmative defense that the transfer of Appellants’ disability policies to American Insurance Company of Texas (“AICT”) created a “novation,” releasing All American from any liability on the policies and thereby barring recovery under the theories of recovery pleaded by Appellants.  Second, Appellants argue that they raised material issues of fact on their claims of damages for breach of contract and rescission or reimbursement of premiums for “illusory contract.”  Finally, Appellants complain that their claim of breach of the duty of good faith and fair dealing was not barred as a matter of law and that they raised an issue of material fact as to that claim by introducing evidence that All American transferred their policies to a company with inadequate assets and financial capability and failed to disclose that AICT lacked such assets or capability.  We reverse and remand the trial court’s grant of All American’s motion for summary judgment in part and affirm in part. 

III.  FACTUAL & PROCEDURAL HISTORY

In 1969, All American began selling Farmers’ and Ranchers’ Disability, Accident and Health Insurance Policies.  For an additional premium, an insured could obtain a “Premium Return Benefit Rider,” providing that, if the insured made no claims during a ten-year period of the policy, All American would refund to the insured eighty percent of the premiums paid during that period.  The benefit rider also provided for a lesser refund of eighty percent of the premiums paid during a ten-year period minus the amount of claims paid if the insured made claims not greater than twenty-five percent of the ten-year premium amount.  

Appellant Vandeventer, a resident of Illinois, purchased a disability policy and benefit rider from All American in 1969.  He paid premiums from September of 1969 to September of 1989, made no claims, and received a return of eighty percent of premiums paid during those two ten-year periods.  Appellant Woodrow, a resident of Indiana, also purchased his disability policy and benefit rider from All American in 1969.  He paid premiums until October 1979, with one claim in 1972, and received a refund of eighty percent of premiums paid for the first ten-year period, less the amount of the 1972 claim.  He paid his premiums for the second ten-year period and received a refund of eighty percent of premiums paid for that period in October 1989.  Appellant Walpole, a resident of South Carolina, purchased his policy and rider from All American in 1971, likewise made premium payments for the two initial ten-year periods, had no claims, and was refunded eighty percent of the premiums paid for those periods.

Effective September 30, 1989, All American entered into an agreement with AICT entitled “Contract of Sale of Accident and Health Insurance Policies and Assumption Agreement” (“Assumption Agreement”), providing for the sale and transfer of its existing Farmers’ and Ranchers’ Disability, Accident and Health Insurance Policies to AICT, including the policies previously sold to Appellants.  Under the Assumption Agreement, All American “agree[d] to transfer, and AICT . . . assumed . . . one hundred percent (100%) of [All American’s] liability under the policies . . . for all losses” on or after the date of sale, “subject to the terms, provisions and duration of such policies.”  

The Assumption Agreement further provided that, in the event the policyholders did not accept the assumption of their policies by AICT, All American was required to remain liable on the policies.  All American also “agree[d] to cede under an indemnity agreement 100% quota share interest in said reinsurance policies.”  AICT agreed to pay a ceding commission to All American in the amount of $3,500,000.   

Under section seven of the Assumption Agreement, entitled “Reserves,” All American agreed to pay to AICT, on the effective date of the agreement, the amount of the estimated reserves, including the “return premium” reserves for payment under the benefit riders totaling $9,622,345.  By section 11 of the Assumption Agreement, 

AICT agree[d] to indemnify and hold [All American] harmless against any and all losses, claims, demands, actions, causes of action, costs or fees arising out of or related to the insurance provided under the policies incurred on or after [the effective date of the agreement], including but not limited to, punitive or compensatory damages . . . and attorneys fees of any such actions against [All American]. 

AICT was not, however, to be held liable for any such claims attributable to actions by All American before the effective date. 

Vandeventer, Woodrow, and Walpole received no advance notice of the sale of their policies by All American to AICT in 1989, nor were they contacted in advance by either company for their assent to the transfer of their policies to AICT.  After the effective date of the sale, each received a letter written on the letterhead of “The National Insurance Group Insurance Companies,” notifying them that an agreement had been reached between AICT and All American that “your policy . . . has been reinsured and assumed by [AICT].” The letter assured the policyholders “that there are no changes in your policy.  All of the terms and conditions of your policy remain the same.”  Referring to an enclosed “Assumption Certificate,” the letter reiterated, “This Certificate confirms there are no changes in the terms and benefits of your current policy.” The notice letter further informed the policyholders that premium notices would be mailed from AICT, enclosing a pre-addressed envelope to mail currently due premiums directly to AICT.  The letter was jointly signed by John F. McManus, Executive Vice President of All American, and by Lyndon L. Olson, President of AICT. 

The “Assumption Certificate” included with the letter to Appellant Woodrow stated:

ASSUMPTION CERTIFICATE

Policy Number and Name  Y000568630              Effective Date

of Insured or Policyholder: Duane D. Woodrow       Sept. 30, 1989

This is to certify that the above-numbered policy, issued or assumed by

ALL-AMERICAN LIFE INSURANCE COMPANY

Chicago, Illinois

Has Been Assumed and Reinsured by

AMERICAN INSURANCE COMPANY OF TEXAS

A Legal Reserve Stock

Life Insurance Company

Waco, Texas

This is to certify that under the terms of an Assumption Agreement between American Insurance Company of Texas and All American Life Insurance Company effective September 30, 1989, your policy (number shown on above label) and all endorsements and riders thereto (herein called “The Policy”) issued or assumed by All American Life Insurance Company, an Illinois Corporation, was transferred to and all liability under it assumed by American Insurance Company of Texas, a Texas Corporation.

All terms and conditions of the Policy remain unchanged, except that American Insurance Company of Texas shall be the insurer.  All premium payments, notices, claims and suits of [sic] actions on the Policy shall hereafter be made directly to American Insurance Company of Texas as though it had issued the Policy originally.

The acceptance of this Certificate and payment of the first premium due to American Insurance Company of Texas by the owner of said policy or contract will evidence your consent to the assumption but will not serve as a waiver or release of any rights the owner may have under said policy or contract.

IN WITNESS WHEREOF, the American Insurance Company of Texas has caused this instrument to be signed by its President and Secretary at the Home Office of the Company in Waco, Texas, as of September 30, 1989. 

Appellants Vandeventer and Walpole received identical letters with identical enclosed certificates.  During the subsequent nine-year period from 1989 to 1998, Appellant Vandeventer paid his premiums to AICT, including the premiums for the return of premium rider, and he had no claims.  Appellants Woodrow and Walpole likewise paid their premiums to AICT for the years from 1989 to 1998, including their premiums for the return of premium rider, and they had no claims.  

In July 1998, after collecting nine years of premiums, including nine years of refund benefit rider premiums, AICT notified Appellants that it was cancelling their policies and denying any return of premiums for that ten-year period.  Appellants filed suit against AICT, All American, and National Group Insurance Companies.  

Appellants alleged four causes of action:  (1) breach of contract; (2) unjust enrichment; (3) illusory contract; and (4) breach of the duty of good faith and fair dealing.
(footnote: 1)  Specifically, as pertinent to this appeal, Appellants alleged that All American transferred its entire block of disability policies to avoid its obligations under the policies in the future, which All American knew was far in excess of its reserves, and hence sought to “dump” the policies on another company.  Appellants further alleged that all American made no appropriate disclosure to Appellants of the terms and conditions of the transfer or the insufficient financial ability of AICT to pay on the policies.  Appellants further alleged that National Group and AICT planned to terminate the policies after the maximum amount of premiums had been collected in order to retain all reserves for their own benefit.  Appellants asserted that they never agreed to release All American from liability under the policies and that both companies remained jointly and severally liable for damages to Appellants.
(footnote: 2) 

All American filed a traditional motion for summary judgment contending that, as a matter of law, Appellants consented to the Assumption Agreement, creating a “novation” that substituted AICT as the insurer, released All American from any liability, and that barred recovery by Appellants under any of the theories alleged.  All American also asserted in its motion for summary judgment that because AICT, not All American, received Appellants’ premiums subsequent to 1989, All American could not have been unjustly enriched.  Additionally, the motion for summary judgment asserted that Appellants had no cause of action based upon an illusory contract because the policy did not deny benefits under all circumstances.  Finally, All American contended it had no duty of good faith and fair dealing under the facts because this case does not involve claims handling.  The trial court granted All American’s motion for summary judgment without specifying the grounds.
(footnote: 3)   

III.  STANDARD OF REVIEW

In an appeal from a summary judgment, the issue is whether the movant’s summary judgment burden has been met by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  
Tex. R. Civ. P.
 166a(c); 
KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.
, 988 S.W.2d 746, 748 (Tex. 1999); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.  
Rhone-Poulenc, Inc. v. Steel, 
997 S.W.2d 217, 223 (Tex. 1999);
 Friendswood Dev. Co. v. McDade + Co.,
 926 S.W.2d 280, 282 (Tex. 1996); 
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).  Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.  
Great Am.
, 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true.  
Rhone-Poulenc, 
997 S.W.2d at 223;
 Harwell v. State Farm Mut. Auto. Ins. Co.
, 896 S.W.2d 170, 173 (Tex. 1995).  Evidence that favors the movant's position will not be considered unless it is uncontroverted.  
Great Am.
, 391 S.W.2d at 47.  

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law.  
Clear Creek Basin
, 589 S.W.2d

at 678.  A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff’s cause of action cannot be established.  
Elliott-Williams Co. v. Diaz
, S.W.3d 801, 803 (Tex. 1999).  
The defendant as movant must present summary judgment evidence that negates an element of the plaintiff’s claim.  Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant.
  
Centeq Realty, Inc. v. Siegler
, 899 S.W.2d 195, 197 (Tex. 1995).

To be entitled to summary judgment on an affirmative defense, such as novation, a defendant must conclusively establish by summary judgment evidence each of the elements of that affirmative defense.  
KPMG Peat Marwick
, 988 S.W.2d at 748; 
Ryland Group, Inc. v. Hood,
 924 S.W.2d 120, 121 (Tex. 1996); 
see also Honeycutt v. Billingsley
, 992 S.W.2d 570, 577 (Tex. App.—Houston 1999, pet. denied) (“Novation is an affirmative defense.”).

IV.  CHOICE OF LAW

Choice of law must be decided on an individual basis.  
Lutheran Brotherhood v. Kidder Peabody & Co.
, 829 S.W.2d 300, 310 (Tex. App.—Texarkana), 
judgment set aside and cause remanded for rendition of agreed judgment
, 840 S.W.2d 384 (Tex. 1992).  Which state’s law governs a substantive issue is a question of law, which we must resolve 
de novo.
 
Minn. Mining & Mfg. Co. v. Nishika, Ltd.
, 955 S.W.2d 853, 856 (Tex. 1996).
(footnote: 4)  
 Appellants resided in South Carolina and Indiana when the policies were issued and at the time of the summary judgment, and the policies were purchased and issued to them in those states.  The only factor connecting Texas with this suit is that AICT is a Texas company, but it was not a party to the summary judgment and is not a party to this suit on appeal.
(footnote: 5)  Therefore, under a choice of law analysis, the substantive law of Indiana should apply to Vandeventer’s and Woodrow’s claims, and the substantive law of South Carolina should apply to Walpole.  
See Hull & Co., Inc., 
889 S.W.2d at 517-18 
(holding Florida law applied to bad faith claim by Florida resident against foreign insurer where contract made in Florida and subject of policy located in Florida);
 see also TV-3, Inc. v. Royal Ins. Co.
, 28 F. Supp. 2d 407, 414-15 (E.D. Tex. 1998) (holding Mississippi law applied where policy was delivered in that state and loss occurred there)
; SnyderGeneral,
 928 F. Supp. at 677 (holding Minnesota law applied where policy was negotiated and purchased in Minnesota, insured corporation was organized and based there, and insurer transacted business there)
.

Appellants cite Indiana and South Carolina law on each of the issues raised, under the supposition that the law of those states “may” apply, as well as cases under Texas law.  All American asserts that the substantive law of Indiana and South Carolina controls.  Neither party, however, has  identified a conflict between the law of those states and that of Texas, the forum state.  As discussed below, we believe the decision under any of these three states’ laws would be the same on the issues relevant to this appeal.  In the absence of a true conflict, we need not undertake a choice of law analysis.  
Duncan v. Cessna Aircraft Co.
, 665 S.W.2d 414, 419 (Tex. 1989) (determining that, before undertaking choice of law analysis, court must first determine whether there is a difference between the applicable law of the foreign state and that of Texas on the issue); 
Young Refining Corp. v. Pennzoil Co., 
46 S.W.3d 380, 385 (Tex. App.—Houston [1
st
 
Dist.] 2001, pet. denied) (finding no necessity to decide which states’ law applied absent a conflict of law on the issues presented); 
St. Paul Surplus Lines Ins. Co. v. Geo Pipe Co.
, 25 S.W.3d 900, 903 n.2 (Tex. App.—Houston [1
st
 Dist.] 2000, no pet.) (“In the absence of a true conflict of law, we do not undertake choice of law analysis.”). 
   

V.  DISCUSSION

Novation

Appellants contend that the trial court erred by granting summary judgment against them because All American failed to establish the affirmative defense of novation as a matter of law.  Alternatively, Appellants contend that their own evidence, including affidavits of expert witnesses raised genuine issues of material fact as to whether novation occurred.   

Applicable Law
  

Novation is the creation of a new obligation in the place of an old one, by which the parties agree that a new obligor will be substituted to perform the duties agreed upon by the old contract, while the original obligor is released from performing those duties.  
Winkler v. V.G. Reed & Sons, Inc.
, 638 N.E.2d 1228, 1233 (Ind. 1994); 
Adams v. B & D, Inc.,
 377 S.E.2d 315, 317 (S.C. 1989); 
Honeycutt v. Billingsley
, 992 S.W.2d 570, 576 (Tex. App.—Houston [1
st
 Dist.] 1999, pet. denied) (defining “novation” as substitution of new agreement between same parties or substitution of a new party to same agreement).  The essential elements of novation are:  (1) a valid, existing contract; (2) a mutual agreement of all parties to a new contract; (3) the extinguishment of the old contract; and (4) a valid new contract.  
Winkler
, 638 N.E.2d at 1233; 
SSD Control Techs. v. Breakthrough Tech., Inc
., 685 N.E.2d 1136, 1138 (Ind. Ct. App. 1997);
 
Superior Auto. Ins., Co. v. Maners
, 199 S.E.2d 719, 722 (S.C. 1973)
; 
Honeycutt
, 992 S.W.2d at 576; 
Vivion v. Grelling
, 837 S.W.2d 255, 257 (Tex. App.—Eastland 1992, writ denied).  Because of its nature as an affirmative defense, the party alleging novation has the burden of proof.  
Honeycutt
, 992 S.W.2d at 577.  

Whether a novation has occurred is a matter of intent of the parties.  
Superior Auto.
, 199 S.E.2d at 722;
 Boswell
 
v. Lyon
, 401 N.E.2d 735, 741 (Ind. Ct. App. 1980); 
Bank of N. Am. v. Bluewater Maint., Inc
., 578 S.W.2d 841, 842 (Tex. Civ. App.—Houston [1
st
 Dist.] 1979, writ ref’d n.r.e.).  Only if a party has agreed to a substitution of a new party in the place of another is the former party relieved of liability.  
Livernois v. Warner-Lambert Co.
, 723 F.2d 1148, 1153 (4
th
 Cir. 1983); 
Superior Auto.
, 199 S.E.2d at 722
; Boswell
, 401 N.E.2d at 741.  Consent of the parties cannot be achieved unilaterally.  
Livernois
, 723 F.2d at 1153;
 Winkler
, 638 N.E.2d at 1233.    

Consent to substitute a new obligor and release the old obligor may be express or implied.  
See, e.g.,
 
Jay Cee Fish Co. v. Cannarella
, 279 F. Supp. 67, 72 (D. S.C. 1968) (holding consent may be the legal result of acts and conduct, even though no 
express
 agreement occurs); 
Rose Acre Farms, Inc. v. Cone
, 492 N.E.2d 61, 69 (Ind. Ct. App. 1986) (recognizing implicit agreement); 
White Truck Sales v. Shelby Nat’l Bank
, 420 N.E.2d 1266, 1271 (Ind. Ct. App. 1981) (acknowledging express agreement);
 
Bluewater Maint., Inc
., 578 S.W.2d at 842
 (“The intent to accept the new obligation in lieu and in discharge of the old one may be inferred from the facts and circumstances surrounding the transaction [and] the conduct of the parties.”).  Nevertheless, novation is never presumed; there must be a “clear, definite intention on the part of all concerned that such is the purpose of the agreement.” 
 J.B. Speed & Co. v. Traylor
, 173 N.E. 461, 464 (Ind. Ct. App. 1930); 
see also Hill v. Citizens Nat’l Bank of Dallas
, 495 S.W.2d 615, 619 (Tex. Civ. App.—Tyler 1973) (holding intent to extinguish original indebtedness never presumed), 
rev’d on other grounds
, 505 S.W.2d 246 (Tex. 1974); 
Gen. Fin. & Guar. Co. v. Smith
, 309 S.W.2d 531, 536 (Tex. Civ. App.—Amarillo 1958, writ ref’d n.r.e.) (stating that novation requires clear and definite intent on the part of all concerned).

Moreover, the relevant intent, whether express or implied, is the obligee’s intent not merely to allow a delegation of duty but actually 
to release
 the first obligor and to seek performance 
only
 from the party allegedly substituted.
  White Truck Sales,
 420 N.E.2d at 1271.  When confronted with a novation defense, courts in Indiana and elsewhere have insisted on clear evidence of the obligee’s intent to release the obligor of his obligations under the original contract.  
See Modern Photo Offset
 
Supply v. Woodfield Group
, 663 N.E.2d 547, 551 (Ind. Ct. App. 1996) (reversing finding of novation absent evidence of intent to release original obligor); 
White Truck Sales
, 420 N.E.2d at 1271 (affirming judgment of no novation absent mention in agreement of release of original obligor); 
Boswell, 
401 N.E.2d at 742-43 (rejecting novation defense as matter of law absent evidence of release).  

Other courts have also required evidence of intent to release the original obligor.  
See CH2M Hill Central, Inc. v. Madison-Madison
 
Int’l Inc.,
 895 F.2d 286, 291-92 (7
th
 Cir. 1989) (applying common law standard under Wisconsin law and affirming summary judgment of no novation);
 Sec. Benefit Life Ins. Co., v. F.D.I.C.
, 804 F. Supp. 217, 225-29 (D. Kan. 1992) (rejecting novation defense as matter of law absent clear understanding to release original obligor)
; In re Integrated Res. Life Ins. Co.,
 562 N.W.2d 179, 182 (Iowa 1997) (reversing finding of novation absent evidence of intent to release original obligor)
.  Unless the obligee makes a clear manifestation of assent to the substitution of the new obligor and release of the original obligor, he retains his rights against the original obligor.  
Sec. Benefit
, 804 F. Supp. at 255; 
Burnett v. W. Madison State Bank
, 31 N.E.2d 776, 780 (Ill. 1941) (holding facts consistent with intent to look to both original and successor bank for payment insufficient to show novation); 
Phillips & Arnold, Inc., v. Frederick J. Borgsmiller
,
 Inc.
, 462 N.E.2d 924, 929 (Ill. App. Ct. 1984) (holding assumption agreement merely added additional debtor absent clear proof of novation); 
see also State ex rel. v. Bank Sav. Life Ins. Co, 
75 P.2d 297, 301 (Kan. 1938) (noting insured need not dissent from terms of reinsurance contract to recover from insurer’s receiver on original insurance contract).

Evidence

As summary judgment evidence in support of its novation defense, All American relied upon:  (1) the contract of sale between All American and AICT; (2) a copy of the assumption certificate and accompanying notice letter furnished to each Appellant after the Assumption Agreement had been entered into by All American with AICT; and (3) Appellants’ class certification hearing testimony.  

All American relies upon the terms of the Assumption Agreement between itself and AICT, by which it agreed to transfer, and AICT agreed to assume, “one hundred percent . . . of [All American’s] liability under the policies . . . for all losses” after the effective date of the sale.  Because AICT assumed all liability under the policies, All American reasons that it necessarily retained no liability.  All American further points out that the Assumption Certificate furnished to the policyholders, including Appellants, recites that “[a]ll terms and conditions of the Policy remain unchanged, 
except that [AICT] shall be the insurer
,” and concluded, “
The acceptance of the Certificate and payment of the first premium due to AICT . . .
 will 
evidence [each insured’s] consent to the assumption.’”
 [Emphases added by All American.]  

All American contends that Appellants thus received notice and expressly or, at least, impliedly agreed to substitute AICT for All American by paying their premiums to AICT, rather than All American, for nine years.  Finally, All American argues that Appellants’ deposition testimony from the class certification hearing is evidence that Appellants consented to substitute AICT for All American.  Each Appellant was asked to and did confirm in his testimony that he received his Assumption Certificate and understood the policies had been assumed by AICT.  Over the nine years after the policies were transferred, Appellants paid their premiums to AICT knowing the policies had been transferred.  They understood that AICT was their insurance company after 1989 and had no objection to the transfer as long as they were treated right.

Appellants responded in the trial court and contend here that they were not made parties to, nor informed in advance of, the terms of the Assumption Agreement between the two insurers.  Indeed, there is no summary judgment evidence that Appellants were ever provided copies of the Assumption Agreement.  In particular, Appellants point out that the notice letter accompanying the Assumption Certificate that was sent to each policyholder states, “[L]et us assure you that there are no changes in your policy.  All of the terms and conditions of your policy remain the same.”  The letter also states, “[T]his Certificate confirms there are no changes in the terms or benefits of your current policy.”  The Assumption Certificates sent to Appellants to be attached to their policies also states that “[a]ll terms and conditions of the Policy remain unchanged, except that [AICT] shall be the insurer.  All premium payments, notices, claims of suits of actions on the Policy shall hereafter be made directly to [AICT] as though it had issued the Policy originally.”  

Appellants point out that neither the notice letters nor the Assumption Certificates mention to the policyholders that any obligations under the policies of the issuing insurer, All American, would be extinguished or released.  To the contrary, the Assumption Certificates state:

[T]he acceptance of this Certificate and payment of the first premium due to [AICT] by the owner of said policy or contract will evidence your consent to the assumption 
but will not serve as a waiver or release of any rights the owner may have under said policy or contract.
  

[Emphasis added by Appellants.]

Appellants’ affidavits averred that they believed All American would continue to stand behind its policies in the event that AICT folded or failed to treat them fairly, even though they looked to AICT for coverage after the sale of the policies to AICT.  Appellants’ affidavits also swore that they never thought that they had a new contract, nor did they believe their rights against All American were extinguished.  

Application of Law to Facts

After examining the terms of the Assumption Agreement, the wording of the notice letter and Assumption Certificates, and the affidavits of Appellants in the light most favorable to Appellants, we hold that All American has failed to meet its summary judgment burden of proof and that Appellants have raised a genuine issue of material fact as to All American’s affirmative defense of novation.   

The Assumption Agreement, to which Appellants were not parties and which was never furnished to them, is no evidence that Appellants agreed to a substitution of AICT for All American so as to constitute a novation.  The only provision in the Assumption Agreement concerning the notification of Appellants of its existence was the service clause providing that AICT would notify policyholders of its assumption of liability under the policies through issuance of Assumption Certificates.  The actual terms of the Assumption Agreement were never submitted to Appellants for their approval, but were already agreed upon and in effect before the Certificates of Assumption were sent to Appellants.  

The Certificates of Assumption sent to Appellants are critical in determining whether Appellants agreed to substitute AICT for All American.  While the Certificate and notice letter state that AICT would be Appellants’ insurer, the Certificates also state, as reiterated by the attached letter, that the terms of the policy remain unchanged.  Most importantly, while the Certificates affirmatively state that acceptance of the Certificate and payment of the first premium to AICT would evidence Appellants’ consent to the “assumption,” those Certificates also affirmatively state that such action by them “will not serve as a waiver or release of any rights” of Appellants under their policies.  

Absent from both the Certificates and the attached letters is any language regarding novation, substitution, extinguishment, or release of Appellants’ rights against All American under the policies.  Importantly, the documents sent to Appellants provide no instruction or guidance to Appellants on what to do if they did 
not
 wish to consent to the assumption of the policies by AICT.  Appellants were effectively faced with either paying AICT their next premium or simply losing their coverage, which included a substantial investment that had built up over the years, in addition to the eighty percent premium refund right.  Appellants argue that this is not a choice at all.  We agree.  

Because the Certificates of Assumption and notice letters received by Appellants repeatedly assured them that there was no change in their policy terms and condition and that payment of premiums to AICT would “not serve as a waiver or release of any rights,” these documents, together with the Assumption Agreement, are evidence of a mere assignment, not a novation, as to Appellants.  
See, e.g.,  Superior Auto
., 199 S.E.2d at 722 (holding express unambiguous language of agreement amounted to modification rather than novation where no radical change occurred or choice was offered).  The mere assignment of the policy could not of itself transfer and release liability of the original contracting party. 
 
Boswell
, 401 N.E.2d at 742; 
Foremost Life Ins. Co. v. Dep’t of Ins.,
 395 N.E.2d 418, 423 (Ind. Ct. App. 
1979) 
(holding original insurer remained jointly liable on reinsured policies transferred to second insurer absent novation)
,
 vacated on other grounds, 
409 N.E.2d 1092 (Ind. 1980);
 Segars v. Segars
, 310 S.E.2d 156, 158-59 (S.C. 1983).

Absent further specific guidance from Indiana or South Carolina courts, we consider cases from other jurisdictions regarding what evidence is necessary to establish a novation relieving the original insurer of liability when transferring a block of policies to another insurer:    

An insurer may not transfer its liability to another company and compel its policyholders to accept the new company as their insurer.  When another insurer assumes the [first] insurer’s obligations, the original insurer is not relieved of its liability to the insured without the consent of the insured to substitute another insurer. 

AICCO, Inc. v. Ins. Co. of N. Am.
, 109 Cal. Rptr. 2d 359, 367 (Cal. Ct. App. 2001) (quoting 14 
Eric Mills Holmes, Appleman on Insurance
 2d § 109.1, at 609 (2000)).

We find
 Prucha v. Guarantee Reserve Insurance Co.
 persuasive.  358 So. 2d 1155 (Fla. Dist. Ct. App. 1978).  In that case, Guarantee had issued the plaintiff a noncancellable income policy with a premium refund rider providing for the return of eighty percent of premiums paid if no benefits were paid under the policy for a ten-year period.  
Id
. at 1156-57.  The policyholder, as in this case, received only
 post hoc
 notices informing him that his policy had been sold to Underwriters and directing that he make future premium payments to Underwriters.  Accordingly, he made his premium payments to Underwriters for the next several years without complaint.  
Id
. at 1157. 

The notices sent to the policyholder in 
Prucha
 were worded very similarly to the notices received by the policyholders in the instant case:  “The only change will be that you will send your premium from this date on to Underwriters. . . . Let me repeat, all the provisions of your policy remain the same; there are no changes.”  
Id
.  As in this case, the notices sent to the policyholder in 
Prucha
 failed to inform the plaintiff that Guarantee would be released from liability.  
Id.
   

When Underwriters subsequently went through rehabilitation proceedings, the policyholder sought his premium refund under the rider from Guarantee, which contended there had been a novation by the sale of the policies.
(footnote: 6)   Reversing a summary judgment for Guarantee, the court held that the evidence was insufficient to establish a novation as a matter of law because “[t]he plaintiff was not presented with an effective alternative to the course that he pursued.” 
 Id
.  The court continued, “Plaintiff[’s] consent was not asked for.  His consent may not be implied where he had no opportunity not to consent.”  
Id
.  Even more to the point, the court stated, “Faced with the accomplished fact of the transfer, all the plaintiff could do was to continue paying the premiums or abandon his investment.”
  Id. 
at 1157-58.
 
 

Baer v. Associated Life Insurance Co.
 is also persuasive.  248 Cal. Rptr. 236, 239 (Cal. Ct. App. 1988).  Baer contracted with Associated Life for insurance coverage under a group medical plan.  
Id
. at 236.  He was injured in an auto accident and rendered a quadriplegic while coverage was in effect and incurred substantial medical expenses.  
Id
.  In the meantime, Associated Life withdrew from doing business in California pursuant to a cease and desist order issued by the California Insurance Commissioner and entered into a Reinsurance and Assumption Agreement in which it transferred Baer’s policy to a second insurer.  
Id
. at 237.  Baer claimed he was not notified of the transfer, but he did submit claims to the second insurer.   When the second insurer defaulted and became insolvent, Baer turned to Associated Life for payment of his benefits.

In a suit by Baer against it, Associated Life filed a motion for summary judgment, contending that the assumption agreement constituted a novation releasing it from any liability.  
Id
.  Associated Life contended that, by submission of his claims to the second insurer, Baer evidenced his consent to the assignment and assumption of liability by the transferee insurer as well as the release of any liability of Associated Life.  The appellate court disagreed.  Reversing the summary judgment and remanding for trial, the 
Baer
 court relied upon and quoted from 
Prucha
 that novation is predicated on consent.  The insured’s consent was not asked for and could not be implied where he had no opportunity not to consent and no opportunity to object to the agreement before it was executed.  The court stated, “It simply is not within the power of an insurer, against the consent of the insured, to substitute another insurer in carrying out of its undertaking.”  
Id
. at 239 (citing 
Prucha
, 358 So. 2d at 1157-58); 
see also Sec. Benefit
, 804 F. Supp. at 226 (holding assumption agreement in which subsequent insurer was substituted for original insurer not clear and definite proof of consent of policyholders to extinguish or relieve original insurer of its obligations where assumption certificates failed to state original insurer was “released” or that its obligations were transferred in full to subsequent insurer);
 Travelers Ind. Co. v. Gillespie
, 785 P.2d 500, 508-09 (Cal. 1990) (stating original insurer not released absent consent of insured, but remained jointly and severally liable with second insurer on policy transferred pursuant to reinsurance and assumption agreement)
.

Both the Florida court in 
Prucha
 and the California court in 
Baer 
relied upon and followed 
American National Insurance Co. v. Briggs
.  70 S.W.2d 491, 494 (Tex. Civ. App.—Beaumont 1934, writ dism’d).  In 
Briggs
, American National denied benefits to Briggs for medical expenses under a health and accident policy it had originally issued.  Briggs sued both American National and Washington National Insurance Company, alleging that the policy had been “assumed” by Washington National and that it was liable with American National by virtue of its assumption.  American National contended that it was entitled to judgment as a matter of law based on Briggs’s pleading of the assumption of liability by Washington National.  

The Beaumont court held against the original insurer, American National, opining, “That Washington National Insurance Company had thus assumed the insurer’s obligations did not relieve appellant of liability to appellee.”  
Id
. at 493-94 (quoting 
Wash. Life Ins. v. Lovejoy
, 149 S.W. 398, 403 (Tex. Civ. App.—Galveston 1912, writ ref’d) (“It is not within the power of [an insurer], against the [insured’s] consent, to substitute [another insurer] in the carrying out of its undertaking.”)). 

In contrast, in
 Epland v. Meade Insurance Agency Associates,
  Lumbermens, as the original insurer on a medical insurance policy issued to the Eplands, entered into an assumption agreement transferring the Eplands’ policy to Reserve Life Insurance Company.  564 N.W.2d 203, 205 (Minn. 1997).  Reserve sent a notice to the insureds advising them of the assumption agreement, instructing them to send future premium payments to Reserve, and stating that, by sending payments to Reserve, the Eplands would be “consenting to release Lumbermens from any liability on the policy.”
  Id. 
at 205.  The Eplands sent their payments to Reserve and chose to renew the policy.  
Id
.

The Supreme Court of Minnesota affirmed a summary judgment in favor of Lumbermens, the original insurer, holding that, under traditional common law principles of assignments, consent of the Eplands was not required to validate Reserve’s “assumption agreement” because consent under general contract principles is not required for an assignment of rights or delegation of duties.  
Id
.  The court held, however, that consent 
was
 necessary to release Lumbermens from liability on the policy, noting that all parties must agree in order to have an effective novation of an insurance contract and that such consent to release an original insurer must “distinctly appear, from the express terms of the agreement, or as a necessary inference from the situation of the parties, and from the special circumstances.”
  Id.
 at 207.  Based on the undisputed facts in that case, the court held that the Eplands manifested consent to both the assumption contract and the release of Lumbermens by paying premiums to, and choosing to renew their policy with, Reserve after receiving notice from it, which expressly stated that by sending payments to Reserve they would be “consenting to release” Lumbermans. 
 Id.
         

Here, in contrast to the facts in 
Epland
, there was not only an absence of any mention to Appellants that payment of premiums to AICT would release All American, but the Certificates of Assumption issued to Appellants stated the contrary — that payment of premiums would not serve as a release or waiver of any rights under the policy.  We hold that All American has failed to establish its affirmative defense of novation as a matter of law and that genuine issues of material fact remain as to whether Appellants accepted AICT as a substitute for All American so as to effect a novation. 
 We sustain Appellants’ first issue. 

Illusory Contract

Appellants argue that All American’s cancellation provision, allowing cancellation of all like policies on the policy anniversary date, constitutes illusory coverage regarding the effect of their premium refund riders, entitling them to restitution or a refund of premiums paid.  All American responds that under the laws of both Indiana and South Carolina, illusory coverage does not apply to this premium refund rider because the policies paid benefits under some circumstances.  

Appellants Vandeventer and Woodrow argue that their refund rider is effectively extinguished by the provision providing that the policy may not be 

renewed “[i]f renewals are declined on a policy anniversary on all like policies then in force.”  More specifically, they contend that premiums could be collected for nine years and that the insurer could then cancel the policies and negate the policy before the tenth-year anniversary date, which is when the eighty percent premium refund is to be issued.
(footnote: 7) 

An insurance policy is considered illusory in Indiana if “a premium was paid for coverage which would not pay benefits under any reasonably expected set of circumstances.”  
Fid. & Guar. Ins. Underwriters, Inc. v. Everett I. Brown Co.
, 25 F.3d 484, 490 (7
th
 Cir. 1994); 
see also
 
City of Lawrence v. Western World Ins. Co.
, 626 N.E.2d 477, 480 (Ind. Ct. App. 1993).  In Indiana, insurance policies that provide illusory coverage are against public policy.  
Fid. & Guar. Ins. Underwriters
, 25 F.3d at 490; 
Monticello Ins. Co. v. Mike’s Speedway Lounge, Inc
., 949 F. Supp. 694, 699 (S.D. Ind. 1996); 
Landis v. Am. Interinsurance Exch.
, 542 N.E.2d 1351, 1354 (Ind. Ct. App. 1989).  When a policy provides illusory coverage, Indiana courts give effect to the reasonable expectations of the insured.  
Landis
, 542 N.E.2d at 1354.
(footnote: 8)  

Indiana law protects the insured from insurance policies that provide coverage that would not pay benefits under any reasonable circumstance.  
City of Lawrence
, 626 N.E.2d at 480; 
see also
 
Fid. & Guar. Ins. Underwriters
, 25 F.3d at 490 (noting that policy did provide coverage under many circumstances and concluding coverage not illusory); 
Monticello
, 949 F. Supp. at 699 (holding absolute alcohol exclusion clause rendered policy coverage illusory); 
Davidson v. Cincinnati Ins. Co.
, 572 N.E.2d 502, 508 (Ind. Ct. App. 1991) (holding coverage for slander and malicious prosecution was illusory due to exclusion clause for expected or intended consequences of conduct); 
Landis
, 542 N.E.2d at 1354 (noting underinsurance clause was ambiguous and applying interpretation in favor of reasonable expectations of insured).  

Because Vandeventer and Woodrow do not dispute that they were paid benefits for two ten-year periods under the premium return rider, All American argues that it established its right to summary judgment on the claim of illusory contract under Indiana law because the policies would, and in fact did, “pay benefits under any reasonable circumstance.”  
City of Lawrence
, 626 N.E.2d at 480.  All American paid Vandeventer and Woodrow eighty percent premium refunds on two separate occasions.  Further, Woodrow filed a claim in 1972 that was honored by All American.  

We disagree that Indiana law may be read so narrowly.  Indiana law supports Appellants’ theory of illusory contract because it also recognizes that a promise is illusory if it “makes performance entirely optional with the promisor.”
  Penn v. Ryan’s Family Steak Houses, Inc., 
269 F.3d 753, 759 (7
th
 Cir. 2001).  An illusory contract cannot form the basis for an enforceable contract.
  Id.
;
 Ind.-Am. Water Co. v. Town of Seelyville
, 698 N.E.2d 1255, 1260 (Ind. Ct. App. 1998)
; Pardieck v. Pardieck
, 676 N.E.2d 359, 364 n.3 (Ind. Ct. App. 1997) (“[A] contract is unenforceable if it fails to obligate [one party] to do anything.”).  
Likewise, under Texas law, a promise is illusory when it fails to bind the promisor, who “retains the option of discontinuing performance.” 
In re C & H News Co.
, No. 13-02-529-CV, 2003 WL 131770, at *4 (Tex. App.—Corpus Christi Jan. 16, 2003, orig. proceeding) (holding agreement in which employer reserved right to unilaterally amend types of claims subject to arbitration was illusory and unenforceable contract)
; 
see also Light v. Centel Cellular Co
., 883 S.W.2d 642, 645 (Tex. 1994); 
In re H.E. Butt Grocery Co.,
 17 S.W.3d 360, 370 (Tex. App.—Houston [14
th
 Dist.] 2000, orig. proceeding).

While the benefit rider entitles an insured to reimbursement of eighty percent of premiums paid if the insured makes no claims during a ten-year period, the nonrenewal provision of the policy written and issued by All American allows nonrenewal on any anniversary date if all like policies are nonrenewed.  Thus, an insured may pay premiums for nine years, refrain from filing claims, and earn entitlement to reimbursement or refund of eighty percent of those premiums, but then, as Appellants argue, have his right to reimbursement nullified by nonrenewal before the ten-year anniversary date for refund of premiums.  According to Appellants, this course of events is what transpired in this case.  Because we have held that All America failed to establish its release from contractual liability by a novation, All America remains jointly and severally liable under the policies as to any benefits owed.  Thus, under both Indiana and Texas law, we hold that All American did not establish its right to summary judgment on Vandeventer’s and Woodrow’s claims for illusory contract as a matter of law.   

Walpole, like Vandeventer and Woodrow, argues that his refund rider provided illusory coverage by reason of the provision allowing nonrenewal on a policy anniversary date.  It also appears that South Carolina recognizes the concept of illusory coverage.  In 
B.L.G. Enterprises, Inc. v. First Financial Insurance Co.
, the South Carolina Supreme Court held that an insurance policy issued to BLG tavern was not illusory notwithstanding a policy exclusion for bodily injury caused by the selling or serving of alcohol.  514 S.E.2d 327, 330-31 (S.C. 1999).  In its discussion, the 
BLG
 court noted that the policy coverage remained intact despite a liquor liability exclusion omitting coverage for activity stemming from the sale or serving of alcohol.  
Id
. (citing 
Excelsior Ins. Co. v. Pomona Park Bar & Package Store
, 369 So. 2d 938, 941 (Fla. 1979)).  The court envisioned a situation by which the tavern would have coverage for a slip-and-fall accident as long as the accident did not involve the sale or service of alcohol.  
Id
.

South Carolina law protects policyholders from insurance policies that would not pay benefits under any reasonable circumstance.  
B.L.G
., 514 S.E.2d at 330-31.  Like Vandeventer and Woodrow, Walpole received an eighty percent premium refund from All American under his premium benefit rider on two separate occasions, and AICT paid him a refund under the rider in February 1991.  We agree with All American that the nonrenewal provision only allows nonrenewal on a policy anniversary date and only if renewal is declined on all similar policies then in force.  This provision does not expressly negate the rider at issue or any coverage offered by the policy.  It does allow, however, nonrenewal on any given anniversary date without regard to the entitlement of insureds to a refund of premiums over a ten-year period under the riders.  Like Indiana, South Carolina also appears to recognize that an illusory contract is “an apparent promise which makes performance optional with the promisor [and] is in fact no promise.”  
Hooters of Am., Inc. v. Phillips
, 39 F. Supp. 2d 582, 617 (D.S.C. 1998) (applying South Carolina law and quoting 
Elmore v. Cone Mills, Corp.
, 23 F.3d 855, 870 (4
th
 Cir. 1994)), 
aff’d
, 173 F.3d 933 (1999).
(footnote: 9)  We hold that the summary judgment was improper as to All American on Walpole’s claim of illusory coverage under South Carolina law.  We sustain Appellants’ second issue.

C.  Duty of Good Faith and Fair Dealing

Appellants pleaded that All American breached its duty of good faith and fair dealing by failing to transfer the policies to a company with assets and financial capability equal to or superior to its own and by failing to inform  policyholders that AICT was “financially inferior” to All American.  Appellants contend this breach prevented them from making an informed decision to accept the substitution of AICT for All American as the insurer.  All American contended by its motion for summary judgment that the duty of good faith and fair dealing applies only to claims handling, precluding a viable claim for breach of that duty as a matter of law.

Indiana recognizes an implied duty in insurance contracts that an insurer will act in good faith with its insured and provides a cause of action for the tortious breach of that duty.  
Hoosier Ins. Co. v. Audiology Found.
, 745 N.E.2d 300, 310 (Ind. Ct. App. 2001)
; Gooch v. State Farm Mut. Auto. Ins. Co.
, 712 N.E.2d 38, 40 (Ind. Ct. App. 1999).  The insurer’s duty of good faith and fair dealing, as recognized by Indiana, includes an obligation to refrain from:  (1) causing an unfounded delay in making payment; (2) making an unfounded refusal to pay policy proceeds; (3) exercising an unfair advantage to pressure an insured to settlement of his claim; and (4) deceiving the insured. 
 Hoosier
, 745 N.E.2d at 310; 
accord Erie Ins. Co. v. Hickman
, 622 N.E.2d 515, 519 (Ind. 1993). 

As contemplated in Indiana, the insurer’s duty of good faith stems from the express and implied contractual obligations of the insurer to the insured.  
See, e.g., Erie
, 622 N.E.2d at 519-20; 
Sell v. United Farm Bureau Family Life Ins. Co.
, 647 N.E.2d 1129, 1134 (Ind. Ct. App. 1995); 
Egnatz v. Med. Prot. Co.
, 581 N.E.2d 438, 441 (Ind. Ct. App. 1991); 
Wedzeb
 
Enters., Inc. v. Aetna Life & Cas. Co.
, 570 N.E.2d 60, 63 (Ind. Ct. App. 1991).  To breach this duty of good faith, the insurer must act deliberately and consciously rather than negligently.  
Colley v. Ind. Farmers Mut. Ins. Group
, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998); 
Johnston v. State Farm Mut. Auto. Ins. Co.
, 667 N.E.2d 802, 805 (Ind. Ct. App. 1996).  
We have found no indication that courts of Indiana would extend the duty of good faith and fair dealing beyond claims handling to encompass conduct of an insurer in a transaction involving sale and transfer of policies to another insurer. 
 Absent such indication, we decline to predict that Indiana courts would extend the duty to encompass Vandeventer and Woodrow’s claim. 

South Carolina likewise recognizes a cause of action against an insurance company for 
breach of the duty of good faith and fair dealing. 
 See Doe v. S.C. Med. Mal. Liab. Joint Underwriting Ass’n
, 557 S.E.2d 670, 674 (S.C. 2001).  Under South Carolina law, “[b]ad faith is a knowing failure on the part of the insurer to exercise an honest and informed judgment in processing a claim.”
  Id. 
(citing
 Am. Fire & Cas. Co. v. Johnson, 
504 S.E.2d 356, 358 (S.C. Ct. App. 1998)); 
see also Peterson v. W. Am. Ins. Co.
, 518 S.E.2d 608, 615 (S.C. Ct. App. 1999) (noting that, in order to show a breach of the duty, the plaintiff must show, among other elements, “an insurer’s refusal to provide benefits due under the contract”).  Thus, it appears, as All American argues, that South Carolina only recognizes good faith claims in the context of claims processing.  Absent any citation by Appellants of case law to support their theory under South Carolina law, we decline to predict that South Carolina courts would hold that a cause of action by an insured for breach of good faith and fair dealing would extend to the context of the facts of this case.

Texas law has long recognized a common law duty of good faith and fair dealing 
in the context of processing and payment of claims under first-party insurance coverage.   
Arnold v. Nat’l County Mut. Fire Ins. Co.
, 725 S.W.2d 165, 167 (Tex. 1987) (holding an insurer has a duty to deal fairly and in good faith with its insured in the processing and payment of claims).  Until recently, the Supreme Court of Texas articulated the definition of the duty of good faith and fair dealing as follows:

A breach of the duty of good faith and fair dealing is established when:  (1) there is an absence of a reasonable basis for denying or delaying payment of benefits under the policy and (2) the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim.  

Republic Ins. Co. v. Stoker
, 903 S.W.2d 338, 340 (Tex. 1995) (citing
 Aranda v. Ins. Co. of N. Am.
, 748 S.W.2d 210, 213 (Tex. 1988)).  In 
Universe Life Insurance Co. v. Giles
, the court recast the liability standard in positive terms such that “an insurer will be liable if the insurer knew or should have known that it was reasonably clear that the claim was covered.”  
950 S.W.2d 48, 56 (Tex. 1997).
  
Giles
 articulated the “reasonably clear” standard found in article 21.21 of the Texas Insurance Code and made it applicable to common law bad faith claims.  
Tex. Ins. Code Ann. 
§§ 
4(10)(a)(ii), 21.21
; 
Giles
, 950 S.W.2d at 55 (stating that the court was “unif[ying] the common law and statutory standards for bad faith”).  Thus, “an insurer breaches its duty of good faith and fair dealing by denying [or delaying payment of] a claim when the insurer’s liability has become reasonably clear.”  
State Farm Fire & Cas. Co. v. Simmons
, 963 S.W.2d 42, 44 (Tex. 1998) (citing 
Giles
, 950 S.W.2d at 56
).

An objective standard is employed to determine “whether a reasonable insurer under similar circumstances would have delayed or denied the claimant’s benefits.”  
Aranda
, 748 S.W.2d at 213.  
Evidence that only shows “a bona fide coverage dispute does not demonstrate that there was no reasonable basis for denying a claim.“ 
 Provident Am. Ins. Co. v. Castaneda
, 988 S.W.2d 189, 193 (Tex. 1998).  Similarly, “evidence of a coverage dispute is not evidence that liability under the policy had become reasonably clear.”  
Id
.  Under Texas law, insurers also have a duty to properly investigate claims.  
See Simmons
, 963 S.W.2d at 44.  “[A]n insurer cannot insulate itself from bad faith liability by investigating a claim in a manner calculated to construct a pretextual basis for denial.”  
Id
. 
 Appellants do not complain, however, of any conduct of All American in denying or delaying payment of any claims.

In response to All American’s summary judgment motion, Appellants offered the affidavit of John J. Dillon, a former commissioner of insurance for Indiana, stating his opinion that All American knew the policies in question were going to be unprofitable and that they were going to have to “dump” them to improve their financial condition.  In support of his contention, Dillon noted that the loss ratio for all policies concerned was eighty-five percent (four years before the sale).  The loss ratio relative to the premium riders was ninety-nine percent just four years before the sale.  Dillon noted that the National Association of Insurance Commissioners placed the minimum loss ratio deemed reasonable in relation to benefits at sixty percent.  Dillon concluded that, because All American had assets of one billion dollars at the time of sale compared to AICT’s assets of thirty-one million dollars, All American was not acting in the best interest of the policyholders in transferring the policies to AICT.   

Appellants argue that this evidence raises a genuine issue of material fact as to whether All American breached its duty of good faith and fair dealing in transferring Appellants’ contracts to AICT without informing Appellants of the large disparity in size between the two insurers and by attempting to “dump” Appellants’ policies onto a smaller insurer that did not have the resources necessary to fulfill its obligation to its insured.  
Notably absent from Dillon’s affidavit or any other summary judgment evidence offered by Appellant, however, is any evidence of a nexus between the size or financial status of AICT and its cancellation of Appellants’ policies or denial of a return of Appellants’ premiums.

The Supreme Court of Texas has been cautious in extending the duty of good faith and fair dealing on a case by case basis.
(footnote: 10)  Appellants have not referred us to any case indicating that the duty of good faith and fair dealing should be extended All American’s conduct regarding the transfer and sale of policies to another insurer.  
The only case relied upon by Appellants in support of their theory of breach of good faith and fair dealing is 
United Fire Insurance Co. v. McClelland
, 780 P.2d 193 (Nev. 1989).  We do not find that case persuasive on the law or facts.

In 
McClelland
, United Fire notified its insureds that it had transferred group medical policies, including those of the plaintiffs, to California Life Insurance Company pursuant to a reinsurance and assumption agreement.  At the time of the transfer, Mr. McClelland was healthy and insurable.  Later, he  incurred substantial hospital and medical expenses for a condition involving altered renal function.  Afterward, the McClellands were thereafter notified by California Life that coverage under their group plan would be cancelled.  After United Fire denied benefits for the medical expenses incurred by plaintiffs, they sued both insurers.  United Fire, like All American in this case, relied upon the affirmative defense of novation as substituting California Life as the insurer in United Fire’s place. 780 P.2d at 195.  Following a jury trial, the plaintiffs were awarded compensatory and punitive damages under theories including bad faith.
  Id.
  Affirming the judgment on appeal, the Nevada Supreme Court held that the issue of novation was one of fact properly submitted to the jury and that there was sufficient evidence, including expert opinion testimony, that United Fire retained responsibility to the plaintiffs under the assumption agreement and knew that it owed the claim.  Thus, the Nevada court held United Fire acted unreasonably and in bad faith in failing to process or pay the claim. 
 Id.
 at 197.

United Fire is not of assistance to Appellants here because they have not alleged that All American refused or delayed payment of benefits in bad faith, but that the insurer breached the duty of good faith to Appellant in transferring the policies to AICT.  Absent evidence of factors that the Texas Supreme Court has historically deemed material to the extension of the duty to protect insureds from the unequal bargaining power of the insurer, 
evidence of the ability to take advantage of an insured’s misfortunes, or evidence of the insurer’s exclusive control over the claim evaluation process, 
we decline to extend the duty of good faith and fair dealing to an insurer in the context of the facts presented
.  
See
 
Great Am.,
 908 S.W.2d at 416; 
see also
 
Lyons v. Millers Cas. Ins. Co.
, 866 S.W.2d 597, 600 (Tex. 1993) (noting insurer’s “disproportionately favorable bargaining posture in the claims handling process”).

The “touchstone of bad-faith liability” in Texas remains “unreasonableness in processing insurance claims.”  
Giles
, 
950 S.W.2d at 64 (Hecht, J., concurring).
  We hold that the trial court properly granted summary judgment to All American as to Appellants’ claim for breach of good faith and fair dealing.  We overrule Appellants’ third issue.

VI.  CONCLUSION

Having overruled Appellants’ third issue, and having sustained their first and second issues, we affirm the summary judgment as to Appellants’ claims for breach of the duty of good faith and fair dealing.  We reverse the trial court’s judgment granting All American’s motion for summary judgment as to Appellants’ breach of contract and illusory contract claims, and we remand those claims.

ANNE GARDNER

JUSTICE

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.  

[DELIVERED MARCH 13, 2003]

FOOTNOTES
1:
Appellants do not appeal the summary judgment on their unjust enrichment claim.   

2:
Appellants also sought class certification on behalf of all persons who had purchased premium refund benefit riders from All American during the period from 1969 to 1974.  An agreement was reached for class certification between Appellants and AICT.  The class certification issues as to All American are not part of this appeal, except that excerpts from testimony at the certification hearing were relied upon by All American in support of its motion for summary judgment.

3:
The trial court granted an agreed motion to sever Appellants’ claims against AICT and National Group, making the judgment in favor of All American final for appeal. 

4:
As to both contract and tort claims, Texas applies the Restatement’s “most significant relationship” test to determine choice of law issues in insurance cases.  
SnyderGeneral Corp. v. Great Am. Ins. Co.
, 928 F. Supp. 674, 677 (N.D. Tex. 1996) (stating Texas law applies
 
Restatement (Second) of Conflict of Laws
 §§ 6, 145, 188 (1971)), 
aff’d
, 133 F.3d 373 (5
th
 Cir. 1998).  Likewise, the “most significant relationship” test is applied by Texas courts to determine which state’s law should be applied in the context of the tort of breach of good faith and fair dealing.  
Hull & Co., Inc. v. Chandler
, 889 S.W.2d 513, 517 (Tex. App.—Houston [14
th
 Dist.] 1994, writ denied).  

5:
The trial court granted All American’s motion for summary judgment without noting which state’s law it applied in making its decision.  

6:
Guarantee also argued that the issue of its liability on the policy had been effectively determined in the rehabilitation proceedings. 
 Id
. at 1157-58.  As to this theory, the court held that the judgment of the court in the rehabilitation proceeding could not relieve an insurance company not a party to the proceedings of contracts with persons not parties to the proceedings. 
 Id
. at 1158.  

7:
We note that the pertinent policy provision references only “nonrenewal,” but Appellants speak in terms of “cancellation,” which does not necessarily carry the same meaning.  For the purpose of this opinion, however, we will assume in favor of Appellants that the two terms are equivalent in meaning.

8:
Texas law does not recognize the “Doctrine of Reasonable Expectations” of the insured as a basis to disregard unambiguous policy provisions.  
Forbau v. Aetna Life Ins. Co.,
 876 S.W.2d 132, 145 n.8 (Tex. 1994).

9:
All American further contends on appeal that all of the disputed premiums were paid subsequent to the transfer to AICT.  Therefore, All American argues any liability for return of those premiums would only lie with AICT.  This argument was not made in the trial court and, therefore, is not a basis for sustaining the summary judgment on appeal.  
See McConnell v. Southside Indep. Sch. Dist.,
 858 S.W.2d 337, 341 (Tex. 1993)
.

10:
Compare Mid-Century Ins. Co. v. Boyte
, 80 S.W.3d 546, 548 (Tex. 2002) (refusing to extend duty of good faith beyond entry of judgment in favor of insured after trial),  
Stewart Title Guar. Co. v. Aiello
, 941 S.W.2d 68, 69 (Tex. 1997) (holding duty of good faith did not extend beyond agreed judgment), 
and
 
Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1
, 908 S.W.2d 415, 416 (Tex. 1995) (holding no common law duty of good faith owed by surety to bond obligee absent factors including unequal bargaining power, nature of insurance contracts permitting insurer to take advantage of insured’s misfortune in negotiating claim resolution, and insurance company’s exclusive control over the claim evaluation process), 
with Rocor Int’l Inc. v. Nat’l Union Fire Ins. Co.
, 77 S.W.3d 253, 261, 265 (Tex. 2002)
 (extending statutory duty under section 16(a) of article 21.21 of the Texas Insurance Code to a liability insurer for failure to attempt settlement on behalf of an insured once liability had become reasonably clear), 
and
 
Union Bankers Ins. Co. v. Shelton
, 
889 S.W.2d 278, 283 (Tex. 1994)
 (extending duty of good faith for conduct of insurer in wrongfully cancelling policy).