# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
September 4, 2018

Lyle W. Cayce
Clerk

No. 16-51224

TRANSVERSE, L.L.C.,

Plaintiff - Appellee Cross-Appellant,

v.

IOWA WIRELESS SERVICES, L.L.C., doing business as i wireless,

Defendant - Appellant Cross-Appellee.

Appeals from the United States District Court
for the Western District of Texas
USDC No. 1:10-CV-517

Before ELROD, COSTA, and HO, Circuit Judges.

PER CURIAM:*

Iowa Wireless Services, a wireless telephone service provider, hired Transverse, a software development company, to develop customized billing software. When their business relationship eventually broke down, they sued each other. Both dissatisfied after a jury and bench trial, they appealed to this court. In *Transverse I*, we affirmed in part, reversed and rendered in part,

---

* Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

No. 16-51224

vacated in part, and remanded.  Both parties have appealed again, challenging various determinations made by the district court on remand.

The district court correctly awarded damages. It also correctly determined that IWS is not entitled to the costs of the premiums for its supersedeas bond.  Accordingly, we now AFFIRM in part, VACATE the district court's judgment only as to Transverse's take-nothing judgment on its Texas Theft Liability Act claim because IWS is the prevailing party, and REMAND because IWS is entitled to a mandatory award of costs and attorney's fees on this claim.

I.

IWS hired Transverse to develop customized billing software, which was known as "blee(p)."   IWS and Transverse documented their business relationship in a "Mutual Non-Disclosure Agreement" and a "Supply Contract." The non-disclosure agreement required IWS not to disclose Transverse's "Confidential Information."   The Supply Contract contained a plan for Transverse to provide IWS customized billing software that satisfied mutually developed "acceptance criteria" on a specific timeline.  According to the Supply Contract, the acceptance criteria was to be developed together in a "User Acceptance Test" document.

However, agreeing on acceptance criteria before the deadline proved difficult for IWS and Transverse.  After several meetings, they only had a draft User Acceptance Test document.  Critically, IWS kept notes of these meetings. Once it became clear that the project would not be finished by the deadline, IWS began considering other options.  IWS contacted Info Directions about potentially developing the billing system.  In order to expedite the process, IWS provided Info Directions with the draft User Acceptance Test and the relevant meeting notes.  Meanwhile, IWS allowed a timeline change for Transverse as

No. 16-51224

long as IWS did not have to "waiv[e] any rights or terms under the original contract."

The changed deadline, however, was not enough. Even though IWS and Transverse did eventually agree to a User Acceptance Test document, the deadline still passed without delivery. Finally giving up on the relationship, IWS terminated the Supply Contract. IWS then hired Info Directions for its billing software needs.

Transverse filed a lawsuit against IWS in Texas state court, alleging breach of the Supply Contract, breach of the non-disclosure agreement, and three tort claims: misappropriation of trade secrets, conversion, and violation of the Texas Theft Liability Act. IWS removed the case to federal court and counterclaimed for breach of the Supply Contract. The claims related to the breach of the Supply Contract were tried to a jury, and the remaining claims were tried to the bench because of the non-disclosure agreement's jury-waiver provision.

Determining that IWS breached the Supply Contract both by wrongfully terminating it and by violating an express prohibition to not give "a competitor access to the Service," the jury found in favor of Transverse. The jury awarded Transverse lost profit damages, reliance damages, and lost value damages for the "access to the Service" breach. The district court, however, set aside the award for the "access to the Service" breach because it determined that it was not supported by legally sufficient evidence. The district court also ruled against Transverse on its tort claims and on its claim for breach of the non-disclosure agreement.

When the parties cross-appealed, we affirmed in part, reversed and rendered in part, vacated in part, and remanded. We held that IWS did breach the Supply Contract by wrongfully terminating but not by providing "access to

the Service" to a competitor.  Moreover, we determined that the district court should not have permitted Transverse to recover lost profits for a twelve-year period for the breach of the Supply Contract claim.  We also explained that Transverse could not recover both lost profits *and* reliance damages for the same breach.  Furthermore, we held that IWS did breach the non-disclosure agreement.

We explained that:

> On remand, the issues remaining . . . are the proper amount and type of damages that Transverse may collect on its breach-by-termination claim; the amount of damages, if any, that Transverse may collect for IWS's breach of the [non-disclosure agreement]; and whether IWS is liable under any of the tort theories pressed by Transverse.

Returning to the district court, Transverse elected reliance damages instead of lost profits, and the district court awarded Transverse $1.7 million in reliance damages for IWS's breach of the Supply Contract.  The district court determined that Transverse had "no cognizable damages" for IWS's breach of the non-disclosure agreement "as a matter of law."  Having determined that IWS's conduct resulted in no lost value to Transverse, the district court also rejected Transverse's misappropriation of trade secrets, conversion, and Texas Theft Liability Act claims.

The district court also made determinations related to attorney's fees.  It determined that: (1) IWS is not a prevailing party under the Texas Theft Liability Act (and thus not entitled to a mandatory award of costs and attorney's fees); and (2) IWS is not entitled to costs for the supersedeas bond premiums on its first appeal.[1]

---

[1] IWS also moved to alter or amend this judgment, but that motion was denied.

No. 16-51224

On appeal, IWS now argues that reliance damages are inappropriate because Transverse failed to prove damages as a matter of law. IWS also challenges the district court's determinations related to attorney's fees.[2] Specifically, it argues that IWS is entitled to attorney's fees for the Texas Theft Liability claim because it is a prevailing party and that IWS should be entitled to costs of the supersedeas bond premiums on the first appeal. In its cross-appeal, Transverse argues that it proved reliance damages and development costs, which are acceptable damages models.

## II.

We review a district court's ruling on a motion for judgment as a matter of law *de novo. Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001). "[J]udgment as a matter of law should not be granted unless the facts and inferences point 'so strongly and overwhelmingly in the movant's

---

[2] IWS contends that Texas law should govern issues—including attorney's fees—arising out of the Supply Contract claims. In *Transverse I*, we said that it was "not entirely clear whether Texas or Iowa contract law" applied, but because the parties agreed that the law at issue was nearly identical, a resolution of the choice-of-law question was unnecessary. On remand, the district court held that Texas law applies under the Supply Contract. IWS now urges us to reverse and render on this point because it contends that Iowa law should govern. In response, Transverse insists that IWS did not adequately raise the choice-of-law issue in its first appeal and that it should be judicially estopped from bringing it now.

Assuming *arguendo* that IWS adequately preserved this issue, the first question is whether the Iowa and Texas law, in fact, conflict. *Bailey v. Shell Western E&P, Inc.*, 609 F.3d 710, 722 (5th Cir. 2010) (explaining that, under Texas's conflict-of-law rules, the initial determination is whether Texas law conflicts with "other potentially applicable law"). During the first appeal, IWS said that the analysis "of the legal insufficiency of the evidence on the contract claims and damages" was the same under Iowa or Texas law. Now, IWS again does not articulate or even identify a conflict between Texas or Iowa law, so our choice-of-law analysis necessarily stops. Accordingly, we will not reach this issue. *See, e.g.*, *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005) ("Where there are no differences between the relevant substantive laws of the respective states, there is no conflict, and a court need not undertake a choice of law analysis."); *Vandeventer v. All Am. Life & Cas. Co.*, 101 S.W.3d 703, 711–12 (Tex. App.—Fort Worth 2003, no pet.) ("In the absence of a true conflict, we need not undertake a choice-of-law analysis.").

No. 16-51224

favor that reasonable jurists could not reach a contrary conclusion.'"  *Id.*
(quoting *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1322 (5th Cir. 1994)).

III.

A.

We begin with the breach of the Supply Contract.  The issue here is
Transverse's damages award.  The jury originally awarded Transverse $10
million in lost profits and $1.7 million in reliance damages based on IWS's
breach of the Supply Contract.  On the first appeal, we vacated the $10 million
award because we determined that Transverse could only recover lost profits
for a two-year period, not a ten-year period.  We also explained that Transverse
"may not recover its lost profits and reliance damages for the same breach."
Accordingly, we "vacate[d] the $10 million award and remand[ed] for a
determination of the proper amount of lost profits and, if necessary, an election
between lost profits and reliance damages, consistent with this opinion."

On remand, Transverse did not argue for damages based on lost profits
over a two-year period but rather elected a reliance damages award.  Thus, the
district court awarded Transverse $1.7 million in reliance damages.  IWS
asserts that Transverse failed to prove reliance damages as a matter of law.
In response, Transverse argues that IWS made the same arguments during its
first appeal, and this court rejected those arguments.  It insists that IWS
cannot re-litigate issues such as causation and proof of damages.

"[A]n issue of law decided on appeal may not be reexamined . . . by the
appellate court on a subsequent appeal." *Med. Ctr. Pharm. v. Holder*, 634 F.3d
830, 834 (5th Cir. 2011) (footnote omitted) (quoting *United States v. Lee*, 358
F.3d 315, 320 (5th Cir. 2004)).  In our first opinion, we said, without
reservation, that "Transverse may collect on its breach-by-termination claim."
We gave Transverse an express choice: prove lost profits based on the

6

appropriate time period or accept reliance damages, and Transverse chose reliance damages. IWS objected to the reliance damages award during the first appeal, and those challenges failed as we explained that it was "a quintessential case for reliance damages."

"The rule of the law of the case is a rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." *United States v. U.S. Smelting Ref. & Min. Co.*, 339 U.S. 186, 198 (1950). IWS may not challenge, for a second time, the propriety of the reliance damages award. Accordingly, we affirm the district court's judgment for Transverse for $1.7 million in reliance damages.

## B.

The next issue is whether the district court, on remand, erred in awarding no damages to Transverse based on IWS's breach of the non-disclosure agreement. In *Transverse I*, we determined that IWS did breach the non-disclosure agreement by providing Info Directions with designated "Confidential Information"—the "User Acceptance Test" document and meeting notes. Originally, the district court had concluded that IWS did not breach the non-disclosure agreement, so it did not reach the issue of damages. Therefore, we remanded for the district court "to evaluate the evidence and testimony presented at trial and determine the appropriate amount of damages to award, if any." We explained that we had "doubts about the reliability and sufficiency of evidence Transverse presented at trial about the damages caused by the disclosure." On remand, after evaluating again "the evidence and testimony presented at trial," the district court determined that

"Transverse has no cognizable damages for breach of the NDA as a matter of law."

On appeal, Transverse asserts that it did establish damages based on the diminished value of the blee(p) technology due to IWS's disclosure to Transverse's competitor. Transverse insists that the district court should have used the "very flexible" law of damages for trade secret misappropriation here and allowed Transverse to prove damages based on the diminished market value of blee(p). According to Transverse, "[b]lee(p)'s diminished market value is a proper means of measuring Transverse's damages for IWS's non-disclosure agreement breach because IWS's wrongful disclosure to a Transverse competitor severely diminished or destroyed the secrecy of its main asset."

Even assuming *arguendo* that the diminished market value of blee(p) is an appropriate measure of damages in this case, the district court correctly determined that Transverse failed to establish any lost value to blee(p) based on IWS's disclosure of the User Acceptance Test document and meeting notes. On this record, there is not legally sufficient evidence that the purported lost value to blee(p) resulted from IWS's specific disclosure. As just one example, even though Transverse's damages expert testified that a percentage of blee(p)'s features were described in the disclosure, there was no testimony that blee(p)'s source code was disclosed to its competitor, and there was no evidence that IWS's disclosure prevented Transverse from developing and selling the blee(p) software. In fact, as the district court observed, Transverse conceded that it abandoned marketing blee(p) software for reasons other than IWS's

No. 16-51224

breach of the non-disclosure agreement. Accordingly, we affirm the district court's take-nothing judgment for Transverse.[3]

C.

Transverse brought three tort claims also based on IWS's breach of the non-disclosure agreement. Transverse asserted that IWS disclosed trade secrets in violation of its confidential relationship with Transverse and misappropriated them by disclosing them to its competitor. Transverse also brought a conversion claim and a claim under the Texas Theft Liability Act based on this same conduct. Because the district court originally ruled that IWS did not breach the non-disclosure agreement, it also ruled that IWS could not be liable in tort for that conduct. In *Transverse I*, we held that IWS *did* breach the non-disclosure agreement when it disclosed the User Acceptance Test document and meeting notes, so we remanded to the district court to consider whether IWS was liable under any of the tort theories pressed by Transverse. We stated "no opinion on whether Transverse proved the elements of any of its tort causes of action."

On remand, the district court concluded that Transverse's misappropriation of trade secrets, conversion, and violation of the Texas Theft Liability Act claims all failed. These claims, the district court reasoned, were

---

[3] Transverse also insists that the district court erroneously failed to consider its development cost damages as an alternative damages model. Transverse, however, did not assert this theory of recovery at trial. The jury awarded the $9.3 million under the "Transverse's Lost blee(p) Value" category, not a category assessing the development costs avoided by IWS. Transverse's damages expert did not testify about development costs. Transverse can only point to one remark by its chief operating officer as to the amount of money spent by Transverse. Because Transverse failed to argue for development costs during trial, it has forfeited this argument. *See F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994) ("As we have held, if a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court.").

all based on IWS's disclosure, and the damages sought were the same sought in its claim for breach of the non-disclosure agreement. Because IWS's disclosure resulted in no lost value to Transverse, the district court determined, all of its tort claims failed.

Proof of damages is an essential—and in this case missing—element of each of Transverse's three causes of action. *See Spear Mktg., Inc. v. BancorpSouth Bank*, 844 F.3d 464, 467 (5th Cir. 2016) ("To establish a claim for theft of trade secrets under . . . the TTLA . . . , a plaintiff had to show [that] . . . the plaintiff sustained damages as a result."); *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 583 (5th Cir. 2013) ("To establish trade secret misappropriation in Texas, a plaintiff must show '. . . damages.'" (quoting *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1123 (5th Cir. 1991))); *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147 (Tex. 1997) ("A plaintiff must prove damages before recovery is allowed for conversion."). Because we agree with the district court that IWS's disclosure resulted in no lost value to Transverse, we also agree that Transverse's misappropriation of trade secrets, conversion, and Texas Theft Liability Act claims fail. Even assuming *arguendo* that the "flexible" damages approach of trade secret misappropriation applies, Transverse failed to prove damages, and so all three of these claims necessarily fail. *See, e.g.*, *Carbo Ceramics, Inc. v. Keefe*, 166 F. App'x 714, 724–25 (5th Cir. 2006) (affirming the district court's grant of summary judgment because the plaintiff "failed to meet its burden of presenting sufficient evidence . . . as to actual damages recoverable under its trade secret misappropriation claim").

## D.

Next is attorney's fees and costs. When we remanded this case to the district court, we instructed the district court to consider "the attorney's fees

for both parties upon timely filed motions," and our judgment ordered that each party bear its own costs on appeal. One issue is whether IWS is a prevailing party under the Texas Theft Liability Act.  The district court determined that IWS is not a prevailing party, but IWS insists that it is the prevailing party and thus entitled to a mandatory award of attorney's fees and costs under the Texas Theft Liability Act.

The Texas Theft Liability Act provides that "[e]ach person who prevails . . . shall be awarded court costs and reasonable and necessary attorney's fees." Tex. Civ. Prac. & Rem. Code § 134.005(b).  The Texas Theft Liability Act "can provide the basis for an attorneys' fee award *if* [the Texas Theft Liability Act] supplies the rule of decision." *Spear Mktg.*, 844 F.3d at 470 (emphasis added). "Texas courts have interpreted 'prevails' to include parties who successfully defend against a TTLA claim, such as achieving a dismissal with prejudice." *Id.* at 470 n.6.  However, "[a] defendant who has the claims against him resolved by voluntary dismissal without prejudice generally is not considered a prevailing party or entitled to an award of attorney's fees." *Arrow Marble LLC v. Estate of Killion*, 441 S.W.3d 702, 706–07 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

Transverse argues that IWS is not a prevailing party because the Texas Theft Liability Act was not the "rule of decision."  However, Transverse's Texas Theft Liability Act claim failed on its own merits.  Regardless of whether the tort claims are subsumed under the terms of the non-disclosure agreement, IWS's disclosure resulted in no lost value to Transverse, and damages are a necessary element of a Texas Theft Liability Act claim.  IWS is a prevailing party because it "successfully defend[ed] against a TTLA claim." *See Spear Mktg.*, 844 F.3d at 470 n.6.  The parties' legal relationship changed to IWS's benefit: IWS cannot again be sued by Transverse for claims arising out of the

same subject matter.  Therefore, IWS is the prevailing party and is entitled to a mandatory award of attorney's fees and costs.  *See* Tex. Civ. Prac. & Rem. Code § 134.005(b).

The next issue is whether IWS is entitled to the costs of the premiums for its supersedeas bond from its first appeal.  The district court originally entered judgment in favor of Transverse, and IWS procured a supersedeas bond to stay execution of the judgment.  On the first appeal, we vacated the district court's judgment for Transverse.  We ordered that each party bear its own costs on appeal.  The district court, on remand, denied IWS's motion for the costs of the premiums for its supersedeas bond.

The district court correctly determined that, under the law of the case, it does not have discretion to award appellate costs.  Federal Rule of Appellate Procedure 39 provides that "if a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed only as the court orders."  We did order: that each party bears its own costs, which includes the premiums for a supersedeas bond.  Therefore, the district court did not err in denying IWS's motion.

IV.

In sum, we now hold that the district court was correct in awarding reliance damages to Transverse based on its breach of the Supply Contract claim; in awarding no damages to Transverse based on its breach of the non-disclosure agreement claim and its three related tort causes of action; and in determining that IWS is not entitled to the costs of the premiums for its supersedeas bond.

Accordingly, we now AFFIRM in part, and we VACATE the district court's judgment only as to Transverse's take-nothing judgment on its Texas Theft Liability Act claim because IWS is the prevailing party and REMAND

because IWS is entitled to a mandatory award of costs and attorney's fees on this claim.